MOORE, J.
hThe defendant, Lawrence Nixon, was convicted of two counts of distribution of marijuana and one count of distribution of cocaine arising from two sales to a pair of confidential informants for a combined sum of less than $100. The trial court imposed sentences of 20 years at hard labor on each count and ordered the prison sentences to be served .consecutively. Additionally, Nixon was ordered to pay a $15,000 fine. He filed this appeal alleging, inter alia, that the 60-year total sentence is excessive. For the following reasons, we hold that the trial court’s order that the three, 20-year sentences be served consecutively results in a sentence that is grossly disproportionate for the offenses committed, and therefore, unconstitutionally excessive. Accordingly, we set aside the sentences and remand to the trial court for resentencing.
FACTS
Nixon was charged by bill of information with two counts of distribution of marijuana, in violation of La. R.S. 40:966(A)(1), and one count of distribution of cocaine, in violation of La. R.S. 40:967(A)(1). The charges arose from two separate transactions. On January 20, 2012, Nixon sold three plastic bags of marijuana to two female' confidential informants for $30. On February 23, 2012, Nixon sold the same informants a rock of cocaine and a marijuana joint for $60. On both occasions, the informants recorded the transactions with an iPhone provided to them.
Nixon was represented by several different attorneys during pretrial proceedings and the initial trial in this case, which *126 ended in a mistrial. For the second jury trial, Nixon chose to represent himself. Following the ^presentation of testimony and evidence, the jury unanimously found Nixon guilty as charged on all three counts.
Nixon filed a motion to reconsider and set aside the verdict and a motion to dismiss. The trial court denied the motions without a hearing.
On June 2, 2016, the trial court sentenced Nixon to 20 years at hard labor on each count of distribution of marijuana. For the distribution of cocaine conviction, the court sentenced Nixon to 20 years at hard labor and ordered the first two years of the sentence to be served without the benefit of parole, probation, or suspension of sentence. The court then ordered the sentences to be served consecutively, and ordered Nixon to pay a fíne of $15,000.
Nixon filed a motion to reconsider sentence, arguing that a total 60-year sentence is excessive. The trial court denied the motion without a hearing. This appeal followed.
DISCUSSION
By his first assignment of error, appellate counsel alleges that the trial court erred by imposing an unconstitutionally harsh and excessive sentence considering the facts of the case. Nixon is 41 years old. Consequently, his age makes the 60-year sentence a de facto life sentence—all for the commission of three small-scale, illicit drug transactions. Nixon is the father of two children, and the grandfather of five. He obtained his GED shortly after dropping out of high school in the twelfth grade, and attended junior college on an athletic scholarship. He asserts that he has an established work history, and only two prior felony convictions for nonviolent offenses. |sHe contends that the sentence fails to provide him with the opportunity to be rehabilitated and return to society as a productive member while being punished in a reasonable manner for his nonviolent criminal acts.
In response, the state argues that the trial court properly reviewed the sentencing guidelines and articulated the specific factors it considered to justify ordering consecutive sentences. In light of Nixon’s extensive criminal encounters with the law, and his previous failures to take advantage of opportunities for rehabilitation, the state maintains that Nixon’s sentence is not excessive.
An appellate court uses a two-pronged test to review a sentence for ex-cessiveness. First, it reviews the record to determine if the sentencing court followed La. C. Cr. P. art. 894.1, which provides sentencing guidelines for courts regarding the imposition of sentences of imprisonment. The statute provides a list of aggravating and mitigating factors that the court may consider to determine if the defendant is eligible for a suspended sentence or probation.[1] Although the court is not required to list every aggravating or mitigating factor present in the case, the record should reflect that the court considered the criteria established in the article. State v. Smith, 433 So.2d 688 (La. 1983); State v. Johnson, 48,320 (La.App. 2 Cir. 11/20/13), 127 So.3d 988; State v. Watson, 46,572 (La.App. 2 Cir. 9/21/11), 73 So.3d *127 471. The goal of La. C. Cr. P. art. 894.1 is for the court |4to articulate the factual basis for the sentence imposed, not to impose rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence, remand is unnecessary even though there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Jones, 398 So.2d 1049 (La. 1981); Johnson, supra; State v. Ates, 43,327 (La.App. 2 Cir. 8/13/08), 989 So.2d 259, writ denied, 08-2341 (La. 5/15/09), 8 So.3d 581.
The second prong of the test entails review for unconstitutional excessiveness. A sentence violates La. Const, art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 01-2574 (La. 1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La. 1993); State v. Allen, 49,642 (La.App. 2 Cir. 2/26/15), 162 So.3d 519, writ denied, 15-0608 (La. 1/25/16), 184 So.3d 1289. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La. 1/15/02), 805 So.2d 166; Johnson, supra; State v. Sims, 49,-682 (La.App. 2 Cir. 2/27/15), 162 So.3d 595, writ denied, 15-0602 (La. 2/5/16), 186 So.3d 1161.
The trial court has wide discretion to impose a sentence within the statutory limits, and the sentence imposed will not be set aside as excessive absent a manifest abuse of that discretion. State v. Williams, 03-3514 (La. 12/13/04), 893 So.2d 7; State v. Diaz, 46,750 (La.App. 2 Cir. 12/14/11), 81 So.3d 228. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial Lcourt abused its discretion. Williams, supra; State v. Free, 46,894 (La.App. 2 Cir. 1/25/12), 86 So.3d 29.
In cases involving multiple offenses and sentences, the trial court has limited discretion to order that the multiple sentences are to be served concurrently or consecutively. When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. Concurrent sentences arising out of a single course of conduct are not mandatory, and consecutive sentences under those circumstances are not necessarily excessive. State v. Hebert, 50,163 (La. App. 2 Cir. 11/18/15), 181 So.3d 795. It is within the court’s discretion to make sentences consecutive rather than concurrent. State v. Robinson, 49,677 (La.App. 2 Cir. 4/15/15), 163 So.3d 829, writ denied, 15-0924 (La. 4/15/16), 191 So.3d 1034.
A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence or record. When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. Among the factors to be considered are: (1) the defendant’s criminal history; (2) the gravity or dangerousness of the offense; (3) the viciousness of the crimes; (4) the harm done to the victims; (5) whether the defendant constitutes an unusual risk of danger to the public; and (6) the potential for the defendant’s rehabilitation. However, the failure to articulate specific reasons for consecutive sentences does not require remand if the record | fiprovides an adequate factual basis to support consecutive sentences. Robinson, supra.
*128 We have carefully reviewed the record in this case, including the transcripts of trial and sentencing. The defendant represented himself at trial, but we also observe that the pretrial record is replete with meritless pro se motions. The defendant repeatedly interrupted the sentencing proceeding with objections, • arguments and meritless oral motions which the trial court had already ruled upon several times in the course of pretrial and trial proceedings. For example, when Nixon’s case was called for sentencing, Nixon orally moved to quash the bill of information and asked for his immediate release claiming his due process rights under the 14th Amendment were violated.. When the, court informed him that he had already,been tried and convicted, Nixon moved to dismiss the case on grounds of lack of subject matter jurisdiction. The court informed him that .the crimes were committed in Jackson Parish where he was tried and convicted, so that jurisdiction was proper. Nixon then immediately moved to “dismiss with prejudice due to a conflict of interest” because the state prosecutor did not appeal a district court ruling in Nixon’s favor quashing the original bill of information because Nixon did not get a 72-hour hearing. The court explained to Nixon, as it had apparently done many times previously, that . Nixon simply won the motion regarding the 72-hour hearing, but the state could still prosecute him for the crimes he had committed. When Nixon was Anally sworn in for the .sentencing hearing, the court asked him if there was anything he wanted to say before going through with the sentencing. Nixon responded:
|7Your honor, I contend there’s a case of double jeopardy that exists which I will argue on appeal and reserve my right.under State v. Crosby, I contend there is a case of entrapment by illegal use of evidence at the second jury trial and contend that to be in violation of the defendant’s due process right. Also, there’s some irregularities that exist in that second jury trial which I contend I find an error on your behalf, Your Hon- or, and I will argue that matter on appeal on a motion to dismiss with prejudice which I had filed here in, Court. I contend, that it violates defendant’s due process clause rights of the Fourteenth Amendment.. Also, Your Honor, I contend there is a procedure violation due to the fact that at the time of arrest I was not issued my Miranda rights by the arresting law enforcement parole officer within time limits at the time of arrest on January 18, 2013. I contend that violates the State and Federal Constitutional rights as well, Your Honor. Also, for lack of subject matter, which I had mentioned, and time constriction of speedy trial I contend that State was in violation of taking the defendant, Lawrence Nixon’s trial, within time limits prescribed by State and Federal Constitutional laws.
The court acknowledged Nixon’s statement and proceeded to sentencing, starting with a review of Nixon’s criminal history obtained from the presentence investigation (PSI).
The PSI reveals that Nixon’s criminal “activity” has spanned 20 years beginning on July 22, -1992, when at age 17, he was charged with illegal possession of stolen things. He was tried, convicted and fined $500, His last criminal charge, felony possession of stolen goods, was committed March 4, 2014, when Nixon was age 38, for which he apparently pled down to misdemeanor possession and received a 6-month sentence. This last charge came after the instant charges were filed against him a year earlier.
Between his first and last criminal arrest, Nixon has 19 other arrests for various crimes charged. The 26' crimes includ *129 ed four battery charges, a rape charge, a charge of manslaughter, seven different burglary charges, three theft charges, and several illegal possession of stolen things charges. Most of these offenses charged were nolle prossed for unknown reasons. | «Others resulted in fines or misdemeanor convictions. However, two of the charges resulted in felony convictions: a conviction for simple burglary of an inhabited dwelling, and a conviction for simple burglary. Both of these convictions ultimately resulted in prison sentences. In the first, Nixon received a suspended sentence and supervised probation, which was terminated unsatisfactorily, and for the second felony conviction, he received a six-year sentence and was paroled after 2 years, but his parole was revoked due to a drug arrest.
Nixon’s only prior drug-related arrest noted on the PSI occurred on January' 14, 2005, when he was charged with possession of drug paraphernalia. The case was nolle prossed.
Nixon objected to the court’s consideration of his record of prior arrests, since they were not the offenses of conviction for which he was now being sentenced. The court acknowledged that Nixon has only two prior felony convictions that it could use “for basic sentencing,” but stated that it could consider his extensive criminal activity that “he has seemed to be involved in for several, several years.”[2]
The court noted that La. C. Or. P. art. 894.1C requires that it state for the record the factual basis for the sentence imposed. Considering the factors listed under paragraph B of Art. 894.1, the court noted that Nixon had received money for the sale of narcotics, a controlled dangerous substance, but the sale did not involve juveniles. It noted the conduct was neither a terrorist act nor did it involve firearms. The court referred to Nixon’s past: criminal behavior as an aggravating circumstance, and stated Rits belief that the criminal activity was likely to recur since Nixon had not responded affirmatively to probation treatment in two prior opportunities. The court noted the only mitigating factor was the hardship arising from the fact that Nixon has children.
■ Following this inquiry, the court found an undue risk that Nixon would commit another crime during a suspended sentence or probation, and that he was in need of correctional treatment or custodial environment best provided by commitment to an institution, and any sentence not involving imprisonment would deprecate or lessen the seriousness of the crimes committed by Nixon.
Accordingly, the court sentenced Nixon to 20 years at hard labor for each of counts one and two, distribution of marijuana, with credit for time served. For count three, distribution of cocaine, the court sentenced Nixon to 20 years at hard labor with credit for time served, the first two years of which were to be served without benefit of probation, parole or suspension of sentence. The court then ordered that the sentences to counts one and two run consecutively to one another, and the sentence for count three to run consecutively to counts one and two.
To justify the imposition of consecutive sentences, the court cited La. C. Cr. P. art. 883 and the factors listed by the court in State v. Boudreaux, 41,660 (La. App. 2 Cir. 12/13/2006), 945. So.2d 898. These factors include the defendant’s criminal history; the gravity or dangerousness of the offense; the viciousness of the crimes; the *130 harm done to the victims; whether the defendant poses an unusual risk of danger to the public; the potential for rehabilitation; and, whether the defendant received a benefit from a plea bargain. Boudreaux, supra at 903.
holn this instance, the court found that Nixon had an excessive criminal history, and observed that the distribution of controlled dangerous substances are considered violent crimes.[3] The court found that the factor of viciousness of the crimes was met in this case by a comment by Nixon on the informant’s video evidence to the effect that he could get all of the dope they wanted. The court found that the transaction constituted a harm, and that the defendant posed an undue risk to the public based upon the criminal activity shown in the PSI. The court noted that defendant’s failure at probation and parole indicated he did not have potential for rehabilitation. Finally, the defendant did not receive the benefits of a plea bargain. The court cited these factors as the basis for giving consecutive sentences under La. C. Cr. P. art. 883.
Initially, we note that the defendant does not complain that each 20-year sentence at hard labor for each count is excessive; his complaint is that the court’s order that the three sentences be served consecutively makes the aggregate 60-year sentence unconstitutionally excessive. Our review of the record demonstrates that the trial court carefully studied the PSI and reviewed Nixon’s criminal history. Although most of Nixon’s criminal history consisted of arrests with no convictions, Nixon has two prior felony convictions and four misdemeanor convictions. The other charges were either dismissed or nolle prossed. We find that the trial court adequately complied with the sentencing guidelines of La. C. Cr. P. art. 894.1. The court noted that Nixon’s crimes involved controlled dangerous substances and he received income from his ongoing drug activities. Also, the court lnfound that Nixon’s crime was a result of circumstances likely to recur and that Nixon was not likely to respond affirmatively to probationary treatment as his prior term of probation terminated unsatisfactorily and his prior parole was revoked after only five months. As a mitigating factor, the court stated that Nixon’s incarceration would cause his family hardship.
The 20-year sentences imposed for each count are quite severe considering that they involved nonviolent, small drug sale offenses—one for $30 and one for $60. However, given Nixon’s history of criminal behavior and his past failures to take advantage of opportunities for rehabilitation, we find that the sentences are not unconstitutionally excessive.
On the other hand, the court’s order that the three terms of imprisonment be served consecutively tripled the already severe 20-year sentences imposed for the single course of conduct, and thereby rendered the sentence grossly disproportionate to the harm caused by the offenses. There is no question that the two drug transactions in this case constituted a common scheme or single course of conduct by the defendant, which required the trial court to justify consecutive sentences. La. C. Cr. P. art. 883. The trial court acknowledged this requirement and referred to the factors listed in State v. Boudreaux, supra. It focused primarily on Nixon’s criminal history and his past failures to take advantage of probation and parole, as it had *131 done when it imposed the 20-year sentences on each count. The findings of the other Boudreaux factors were attenuated, at best, however. Even considering the presence of some of these factors, the | ^aggregate 60-year sentence is grossly disproportionate to the offenses committed in this case even where there is a possibility of parole.[4]
In State v. Boudreaux, supra, the trial court sentenced a 42-year old defendant to four years imprisonment at hard labor without benefits on each of 14 counts of video voyeurism to be served consecutively, resulting in a 56-year aggregate sentence. This court vacated the sentence and remanded to the trial court for resentencing after the panel concluded that the 56-year term without parole was “out of proportion to the offense” and imposed “needless infliction of pain and suffering.” Id., at 904. It also noted that the trial court did not adequately address the fact that the defendant’s activities all formed part of a single scheme or plan.
In State v. Simpson, 50,334 (La. App. 2 Cir. 1/13/2016), 186 So.3d 195, writ denied, 2016-0244 (La. 3/31/17), 217 So.3d 358, 2017 WL 1315821, the defendant was sentenced to six years at hard labor for each of ten counts of cruelty to a juvenile and the court ordered the sentences to be served consecutively, resulting in an aggregate 60-year sentence. A panel from this court noted that although the trial court gave lengthy reasons for imposing the sentences, it did not give adequate reasons to justify imposing consecutive sentences. We found that the imposition of consecutive sentences was out of proportion to the offenses and imposed a purposeless and needless infliction of pain and suffering to the defendant.
|1sWe conclude that the trial court’s order that the 20-year sentences imposed be served consecutively results in a sentence that is unconstitutionally excessive. The resulting 60-year sentence is out of proportion to the offenses and imposes a purposeless and needless infliction of pain and suffering. The order that the sentences be served consecutively is therefore vacated and set aside.
La. C. Cr. P. art. 881.4 states that if an appellate court finds that a sentence must be set aside on any ground, the court shall remand for resentencing by the trial court. The appellate court may give direction to the trial court concerning the proper sentence to impose. Id.
Accordingly, we vacate and set aside Nixon’s sentence on the grounds of exces-siveness for the reasons stated herein-above, and remand to the trial court for resentencing in accordance with this opinion.

Pro Se Assignments of Error

Nixon raised several assignments of error and submitted a pro se brief. We now turn to an analysis of the merits of these assignments.
In his first assignment of error, Nixon argues that when he was arrested on January 18, 2013, he was not advised of his Miranda rights. The only officer that testified at trial, Dep. Donovan Shultz, testified that he did not arrest Nixon and therefore, he did not know if Nixon was advised of his rights.
*132 In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that the prosecution may not use a statement, whether exculpatory or inculpatory, stemming from custodial interrogation of a defendant unless it demonstrates the use of | ^procedural safeguards effective to secure the privilege against self-incrimination. The obligation to provide Miranda warnings attaches when a person is questioned by law enforcement after he has been taken into custody or otherwise deprived of his freedom of action in any significant way. Id. As., such, Miranda warnings are applicable only when it is established that the defendant has been subject to a “custodial interrogation.” State v. Hunt, 09-1589 (La. 12/1/09), 25 So.3d 746.
Although there is no evidence to indicate that Nixon was advised of his Miranda rights at the time of his arrest, the state did not seek to introduce any inculpatory statements made by Nixon at trial, and Nixon failed to identify any inculpatory statements that he made at the time of his arrest or thereafter. Accordingly, this assignment of error is without merit.
In his second and third pro se assignments of error, Nixon raises claims related to his 72-hour hearing. On March 1, 2013, shortly after he was arrested, Nixon filed a pro se motion to quash, arguing that he was not properly brought before a judge within 72 hours from the time of his arrest, as required by La. C. Cr. P. art. 230.1. Following a hearing on the matter, the trial court granted Nixon’s motion to quash and released him of his bond obligation.
On appeal, Nixon again complains that he was not brought before a judge within 72 hours of his arrest. Further, Nixon argues that because the trial court granted his motion to quash, the state no longer had, subject matter jurisdiction to pursue the charges against him.
La. C. Cr. P. art. 230.1 requires that a person be brought before a judge for the appointment of counsel within 72 hours from the time of his arrest. The remedy for a violation of La. C. Cr. P. art. 230.1 is pretrial release, and it has no effect whatsoever on the validity of the proceedings thereafter. La. C. Cr. P. art. 230.1(D); State v. Manning, 03-1982 (La. 10/19/04), 885 So.2d 1044, cert. denied, 544 U.S. 967, 125 S.Ct. 1745, 161 L.Ed.2d 612 (2005).
Further; an alleged violation of La. C. Cr. P. art. 230.1 is moot after conviction and sentence. State v. Franklin, 43,173 (La.App. 2 Cir. 9/17/08), 996 So.2d 387, writ denied, 08-2371 (La. 5/22/09), 9 So.3d 138.
Nixon was already successful in arguing that he did not receive a proper 72-hour hearing, and he was released of his bond obligation,. Further, any failure to comply with La. C. Cr. P. art. 230.1 does not result in the dismissal of the charges against the defendant. These assignments of error are therefore without merit.
, By his fourth assignment.of error, Nixon argues that his attorney was ineffective in failing to test and/or suppress “any and all evidence being introduced by the state” and in failing to challenge “any evidence introduced” as fruit of the poisonous tree.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief in the trial " court than by appeal. This is because post-conviction relief creates the opportunity for a full evi-dentiary hearing under La. C. Cr. P. art. 930. However, when the record is sufficient, an appellate court may resolve this issue on direct appeal in the interest of *133 judicial economy. State v. Smith, 49,356 (La.App. 2 Cir. 11/19/14), 152 So.3d 218, writ denied, 14-2695 (La. 10/23/15), 179 So.3d 597.
The right of a defendant in a criminal proceeding.to the effective assistance of counsel is mandated by U.S. Constitutional Amendment VI. State v. Wry, 591 So.2d 774 (La. App. 2 Cir. 1991). A claim of ineffectiveness of counsel is analyzed under the two-propg test developed in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
First, to establish that his attorney was ineffective, the defendant must show that counsel’s performance was deficient. This requires a showing that counsel, made errors so serious that he was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that counsel’s deficient performance prejudiced his defense and that, but for counsel’s unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland, supra; State v. Reese, 49,849 (La.App. 2 Cir. 5/20/15), 166 So.3d 1175, writ denied, 15-1236 (La. 6/3/16), 192 So.3d 760.
A reviewing court must give great deference to trial counsel’s judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. Smith, supra. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. Strickland, supra; Reese, supra.
Nixon has not alleged what evidence should have been suppressed or the basis on which such evidence should have been suppressed. Mere conclusory statements are insufficient to establish a claim of ineffective assistance of counsel. There is no indication that the performance of any of Nixon’s attorneys, prior to his .decision to proceed pro se, was in any way deficient. This assignment of error is without merit.
117In his fifth assignment, Nixon claims that the trial court erred in failing to rule on his pro se motion for a speedy trial, filed on April 16, 2013, thereby denying him his right to a speedy trial,
A motion by the defendant for a speedy trial, in order to be valid, must be accompanied by an affidavit from the defendant’s attorney, certifying that he is prepared to proceed to trial. La. C. Cr. P. art. 701(D)(1). However, if the affidavit from the attorney is not attached to the motion for a speedy trial, then the matter must be set for a contradictory hearing within 30 days. La. C. Cr. P. art. 701(F).
La. C. Cr. P. art. 701 provides that the sole remedy for failure to commence trial within the mandated time period is pretrial release without bail. Once a defendant has been convicted, any allegation that La. C. Cr. P. art. 701 has been violated becomes moot. State v. Bradham, 46,985 (La.App. 2 Cir. 2/29/12), 87 So.3d 200; State v. Scott, 50,920 (La.App. 2 Cir. 11/16/16), 209 So.3d 248.
A trial court is not required to entertain pro se motions when a defendant is represented by counsel and entertaining the motions will lead to confusion at trial. State v. Holmes, 06-2988 (La. 12/2/08), 5 So.3d 42, cert. denied, 558 U.S. 932, 130 S.Ct. 70, 175 L.Ed.2d 233 (2009). While an indigent defendant has a right to counsel as well as the opposite right to represent himself, he has no constitutional right to be both represented and representative. State v. Winzer, 49,316 (La.App. 2 Cir. 10/8/14), 151 So.3d 135, writ denied, 14-2373 (La. 4/22/16), 191 So.3d 1044.
*134 Because Nixon has now been convicted and sentenced, his claim that La. C. Cr. P. art. 701 was violated is moot. Further, ,at the time Nixon filed his pro se motion for a speedy trial, he was represented by counsel. 11RAlthough the trial court set the matter for a hearing, there is no indication that such hearing was ever held. However, the court minutes indicate that the trial court denied Nixon’s pro se motions on October 8, 2013. To the extent that the trial court denied Nixon’s motion for a speedy trial, the court was within its discretion because Nixon was represented by counsel and it appears that consideration of the motion would have led to confusion given that Nixon was represented by several attorneys who requested multiple continuances throughout the course of these proceedings, which conflicted with his motion for a speedy trial. Accordingly, this assignment of error is without merit.
In his sixth assignment of error, Nixon argues that when he asked to view, test, and inspect the iPhone which was used by the confidential informants to record the drug transactions, the state did not produce the iPhone. Also, Nixon claims that he was convicted based on the testimony of non-credible witnesses that had prior felony convictions, pending charges, and who gave perjured testimony at trial.
Suppression, by the prosecution, of evidence favorable to an accused upon his request for such evidence violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Moran, 47,804 (La.App. 2 Cir. 4/10/13), 135 So.3d 677, writ denied, 13-1052 (La. 11/15/13), 125 So.3d 1101.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential | ^elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La. 5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Sullivan, 51,180 (La. App. 2 Cir. 2/15/17), 216 So.3d 175, 2017 WL 604990. The appellate court does not assess the credibility of witnesses or reweigh evidence, and accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Smith, 94-3116 (La. 10/16/95), 661 So.2d 442; State v. Broome, 49,004 (La.App. 2 Cir. 4/9/14), 136 So.3d 979, writ denied, 14-0990 (La. 1/16/15), 157 So.3d 1127.
To present sufficient evidence of distribution of a controlled dangerous substance (“CDS”), the state must prove the following elements: (1) delivery or physical transfer of the CDS to its intended recipient; (2) guilty knowledge of the CDS at the time of the transfer; and (3) the exact identity of the CDS. Sullivan, supra.
We find no indication in the record that any evidence was withheld from the defense in violation of Brady. The record shows that the state complied with its discovery obligations and provided the defense with a copy of the video taken from the iPhone. The state was not required to provide the iPhone, which belongs to the sheriffs department, in discovery or introduce it at trial, Nixon did not subpoena the iPhone and the first time he requested to inspect the iPhone was at trial during cross-examination of Dep. Shultz. Further, Nixon failed to allege or establish that the iPhone constitutes exculpatory evidence or that he suffered any prejudice.
*135 In addition, to the extent that Nixon raises a claim regarding the sufficiency of the evidence, this assignment of error is without merit. At |2ntrial, Dep. Shultz and the two confidential informants testified as to the circumstances of the drug transactions, which was confirmed by the videos, and the informants identified Nixon as the person who sold them the drugs. The evidence presented at trial was sufficient to prove that Nixon distributed marijuana and cocaine.
The initial trial in this case was held on May 18-19, 2015. However, because the state improperly played portions of the iPhone video taken by the informants which referenced Nixon’s prior time in prison, defense counsel made a motion for mistrial, which the trial court granted.
In his seventh assignment of error, Nixon claims that his convictions violate the prohibition against double jeopardy because the state used the same charges and evidence against him in the second trial as it used in the first trial which resulted in a mistrial.
The Fifth Amendment to the United States Constitution and La. Const. art. I § 15 prohibit placing a person twice in jeopardy of life or limb for the same offense. Double jeopardy is defined in La. C. Cr. P. art. 591 as follows:
No person shall be twice put in jeopardy of life or liberty for the same offense, except, when on his own motion, a new trial has been granted or judgment has been arrested, or where there has been a mistrial legally ordered under the provisions of Article 775 or ordered with the express consent of the defendant.
Thus, under this provision, when the defendant moves for a mistrial, double jeopardy does not bar a subsequent prosecution for the same offense.
However, the United States Supréme Court, in a series of decisions, has provided an exception to this general rule where the defendant is required to move for a mistrial due to conduct on 'the part of the government intended to provoke a mistrial request by a defendant. See U.S. v. Dinitz, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); U.S. v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); State v. Johnson, 49,815 (La.App. 2 Cir. 11/18/15), 178 So.3d 1140, writ denied, 15-2287 (La. 12/16/16), 211 So.3d 1166. In Oregon v. Kennedy, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), the Supreme Court explained that the intent of the prosecutor must be examined to determine whether the double jeopardy clause has been violated because of prosecutorial misconduct:
Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant’s motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause ... Only where the governmental conduct in question is intended to “goad” the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.
Under La. C. Cr. P. art. 591, because Nixon moved for a mistrial in the first trial, double jeopardy does not bar a subsequent prosecution for the same offenses. Further, although the appellate record does not contain the transcript of the initial trial, Nixon failed to allege or prove that the state was in bad faith in playing those portions of the video that referenced his prior time in prison or that the state intended to provoke him into moving for a mistrial. This assignment of error is without merit.

Error Patent Review

After sentencing Nixon to 20 years at hard labor on each count, the trial court *136 ordered Nixon to pay a fine of $15,000. However, the court failed to specify on which count the fine was imposed. As such, Nixon’s sentences are indeterminate. In similar situations in other cases, courts have vacated the defendant’s indeterminate sentences and remanded the matter to the trial |22court for clarification. See State v. Gomez, 06-417 (La.App. 5 Cir. 11/28/06), 947 So.2d 81.
On the other hand, because the penalty provision for distribution of marijuana, La. R.S. 40:966(B)(3), provides for a mandatory fíne, and the penalty provision for distribution of cocaine, La. R.S. 40:967(B)(4)(b), only provides for a discretionary fine, we conclude that the $15,000 fíne was imposed for one of the counts of distribution of marijuana. As to the other count of distribution of marijuana, although the trial court’s failure to impose a mandatory fine results in an illegally lenient sentence, this court is not required to remand for imposition of a mandatory fine. State v. Dock, 49,784 (La.App. 2 Cir. 6/3/15), 167 So.3d 1097, The state has not complained about the error and Nixon is not prejudiced by the trial court’s failure to impose the fíne.
CONCLUSION
For the , foregoing reasons, we vacate and set aside Nixon’s sentence and remand to the trial court for resentencing in accordance with this opinion. In all other respects, the defendant’s convictions are affirmed. .
CONVICTIONS AFFIRMED; SENTENCE VACATED AND SET ASIDE; REMANDED FOR RESENTENCING.
BLEICH, J., concurs in the results.

. The important factors that the sentencing court should consider are the defendant’s personal history (age, family ties, marital status, health, and employment record), prior criminal record, the seriousness of the offense, and the likelihood of rehabilitation. However there is no requirement that specific matters be given any particular weight at sentencing. State v. Taves, 03-0518 (La. 12/3/03), 861 So.2d 144; State v. Thompson, 50,392 (La. App. 2 Cir. 2/24/16), 189 So.3d 1139.

. Nixon responded to the court, "I am not a beast or a monster that I am portrayed to be,” and he asked the court for mercy. Cf. Shakespeare’s Shylock in Merchant of Venice, "I am not an animal!”

. We note that distribution of marijuana or cocaine are not listed among the designated "crimes of violence” under La. R.S. 14:2(B).

. We are cognizant of the recent findings and recommendations of the Louisiana Justice Reinvestment Task Force which was created to study the state’s criminal justice system and recommend strategic changes. The study determined that the primary reason Louisiana leads the nation in imprisonment is because it incarcerates people for nonviolent drug and property offenses more than other states do— twice the rate of South Carolina and three times the rate of Florida, even though those states have nearly identical crime rates.