McCALLUM, J.
*868 These consolidated criminal appeals come to us pursuant to a plea agreement whereby Noel Thomas Means pled guilty as charged to five counts of unauthorized entry of a place of business in violation of La. R.S. 14:62.4. Means was sentenced to five consecutive terms of five years at hard labor for each conviction, making an aggregate sentence of 25 years. He was not fined for any of the five convictions. Means filed a timely motion to reconsider sentence, which the trial court denied. He now appeals his sentences on the grounds of constitutional excessiveness. For the reasons stated herein, we affirm Means' convictions and sentences.
FACTS
Means' criminal acts were captured on video surveillance. The factual basis for the guilty pleas as set forth in the record shows that on or about August 13 and August 20, 2016, and on three separate occasions on July 29, 2016, Means intentionally and without authorization entered into the Ellis Pottery premises located in Bossier Parish, Louisiana. On January 10, 2017, with representation from appointed counsel, Means pled guilty as charged to five separate counts of unauthorized entry of a place of business in violation of La. R.S. 14:62.4. He did so pursuant to a plea bargain with the State, which agreed not to file a multiple offender bill; the agreement left sentencing to the court.[1] After accepting the pleas, the trial court ordered a presentence investigation report ("PSI report").
The defendant appeared for sentencing on May 30, 2017, and the trial court confirmed review of the PSI report and consideration of the La. C. Cr. P. art. 894.1 factors. The judge called Means' criminal history "astounding," as it consisted of 69 misdemeanor convictions, many of which were "theft related," and four felony convictions (excluding the five convictions in the instant case).[2] The trial judge stated that Means had more criminal convictions than anyone he had ever seen in his 21 years of practicing law. He further related that when Means was not in jail, he "was committing a crime" and was unable to help himself or rather that he "helped himself to everything" he wanted.
The trial court imposed consecutive sentences of five years at hard labor on each conviction "for a total of twenty-five years at hard labor." On May 31, 2017, Means filed a motion to reconsider sentence, arguing that the sentences were constitutionally excessive. On June 9, 2017, the trial court denied the motion, noting its careful consideration of the PSI report. On July 21, 2017, the trial court also denied Means' pro se presentence motion requesting the trial court impose concurrent sentences.
*869 The trial court denied both motions and this appeal followed. Additionally, Means has an extensive history of parole and probation violations, having had his parole revoked at least six times and his probation revoked at least twice.
DISCUSSION
On appeal, Means argues that his 25-year hard labor sentence is harsh and excessive. Means concedes that he has an extensive criminal history, but argues that this one factor should not be determinative. The defendant argues that three of the offenses occurred on the same day and there were no allegations that anything was taken in any of the cases. The defendant asserts that the trial court failed to take into account his supposed mental health issues, and also claims that he took responsibility for his actions. Means argues that his incarceration will put a significant financial burden on the state and that the sentence lacks a balanced approach and is merely punitive. Ultimately, it is Means' position that the offenses committed, even in light of his criminal history, do not justify the imposition of near-maximum consecutive sentences.
Based on his criminal history, the state argues that the trial judge did not abuse his discretion in sentencing Means. The state also points out that the defendant received a substantial benefit from the plea agreement: it protected him from habitual offender sentencing.[3] Finally, the state argues that Means fits the definition of a career criminal who has shown no evidence of rehabilitation.
Law
For each of his five convictions of unauthorized entry of a place of business, Means faced maximum sentencing exposure of six years with or without hard labor, and a possible fine of up to $1000. Thus his aggregate total sentencing exposure, barring habitual offender sentencing, was 30 years' imprisonment and $5000 in fines. La. R.S. 14:62.4.
When a defendant's motion to reconsider sentence raises only a claim that the sentence imposed was constitutionally excessive, he is relegated to review of his sentence on that ground alone. La. C. Cr. P. art. 881.1 ; State v. Turner, 50,221 (La. App. 2 Cir. 1/20/16), 186 So.3d 720, writ denied , 2016-0283 (La. 2/10/17), 215 So.3d 700.
A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Shaikh , 2016-0750 (La. 10/18/17), 236 So.3d 1206 ; State v. Dorthey, 623 So.2d 1276 (La. 1993) ; State v. Bonanno, 384 So.2d 355 (La. 1980).
To constitute an excessive sentence, a reviewing court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock the sense of justice or that the sentence makes no reasonable contribution to acceptable penal goals and, therefore, is nothing more than the needless imposition of pain and suffering. State v. Griffin, 2014-1214 (La. 10/14/15), 180 So.3d 1262. The trial court has wide discretion in the imposition of *870 sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. State v. Williams , 2003-3514 (La. 12/13/04), 893 So.2d 7. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Williams , supra ; State v. Fontenot , 51,072 (La. App. 2 Cir. 1/11/17), 211 So.3d 1236.
Where a defendant has received a significant reduction in sentencing exposure through a plea bargain, the trial court has great discretion in imposing even the maximum sentence for the pled offense. State v. Washington , 50,337 (La. App. 2 Cir. 1/13/16), 185 So.3d 852, writ denied , 2016-0224 (La. 2/3/17), 215 So.3d 688 ; State v. Sanders, 49,241 (La. App. 2 Cir. 10/22/14), 151 So.3d 160, writ denied , 2014-2536 (La. 1/16/15), 157 So.3d 1133.
La. C. Cr. P. art. 883, relating to concurrent and consecutive sentences, provides in pertinent part:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.
Concurrent sentences arising out of a single course of conduct are not mandatory, and consecutive sentences under those circumstances are not necessarily excessive. State v. Scott , 50,920 (La. App. 2 Cir. 11/16/16), 209 So.3d 248, writ denied , 2017-0353 (La. 11/13/17), 229 So.3d 478 ; State v. Nixon , 51,319 (La. App. 2 Cir. 5/19/17), 222 So.3d 123 ; State v. Hebert , 50,163 (La. App. 2 Cir. 11/18/15), 181 So.3d 795. It is within the court's discretion to make sentences consecutive rather than concurrent. State v. Nixon , supra ; State v. Robinson , 49,677 (La. App. 2 Cir. 4/15/15), 163 So.3d 829, writ denied , 2015-0924 (La. 4/15/16), 191 So.3d 1034.
A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence or record. Nixon, supra. When a sentencing court directs that multiple sentences arising from a single course of conduct be served consecutively, the sentencing court is required to state the factors considered and its reasons for the consecutive sentences. State v. Craft, 49,731 (La. App. 2 Cir. 2/26/15), 162 So.3d 539, writ denied , 2015-0544 (La. 1/25/16), 184 So.3d 1288. The factors to be considered include: (1) the defendant's criminal history; (2) the gravity or dangerousness of the offense; (3) the viciousness of the crimes; (4) the harm done to the victims; (5) whether the defendant constitutes an unusual risk of danger to the public; (6) the potential for the defendant's rehabilitation; and (7) whether the defendant received a benefit as part of a plea bargain. Id. ; State v. Baker, 49,175 (La. App. 2 Cir. 8/27/14), 148 So.3d 217. However, the sentencing court's failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. State v. Nixon, supra ; State v. Boudreaux, 41,660 (La. App. 2 Cir. 12/13/06), 945 So.2d 898, writ denied , 07-0058 (La. 11/2/07), 966 So.2d 591.
Analysis
Because Means' motion to reconsider sentence raised only a claim that the sentence imposed was constitutionally excessive, *871 he is relegated to appellate review of his sentence on that ground alone.
We agree with the assessment of the trial judge: the sheer number of the defendant's prior criminal convictions is astounding. At the time of the instant convictions, Means had actually been convicted an average of almost 2.5 crimes per year for the prior 30-year period. This is particularly noteworthy when the fact that the defendant has been intermittently incarcerated during that time is considered. Since 1987, he has been convicted of 69 misdemeanors and four felonies (excluding the five felonies in the instant case). As noted by the trial court, many of Means' misdemeanors are theft related, but they also include several instances of assaultive behavior.
Means' record indicates that he is an exceedingly poor prospect for rehabilitation. The trial judge imposed on him less than the six-year maximum on each count, and did not fine him for any of the instant felonies. It is also significant that Means received a substantial reduction in sentencing exposure from the plea bargain: the state agreed to forgo habitual offender proceedings, which, if successful, would have exposed the defendant to a sentencing range of 20 years to life imprisonment. This enhanced sentence would have been in addition to whatever sentences Means would have been given for the four other counts.[4]
We hold that the five-year consecutive terms imposed for each count, including the three counts Means committed on July 29, 2016, can be justified on the record based upon Means' criminal history, his poor prospects for rehabilitation, and the substantial reduction in sentencing exposure he received via plea bargain. The defendant's 25-year sentence is toward the upper end of the sentencing range. However, as noted by the trial court, Means' 30-year history of criminal activity and his poor performance during prior periods of probation and parole indicate that he is unlikely to be rehabilitated and that he is likely to commit such crimes again. Given these factors, the sentence imposed, although harsh, does not shock the sense of justice. Thus, based upon this record, we cannot say the sentence imposed on this defendant is constitutionally excessive. Consequently, the assignment of error lacks merit.
DECREE
The defendant's convictions and sentences are AFFIRMED.

The guilty plea for each of the five counts occurred at the same time but each count was charged by a separate bill of information and prosecuted under a different trial court docket number. The cases were consolidated for appeal by order of this Court on December 7, 2017.

To wit: felony theft, 7/27/1998; illegal possession of stolen things, 1/29/2002; simple burglary, 9/3/2002; felony theft, 10/27/2009. For further detail, read n.3, infra.

The PSI report shows that Means' felony record includes a 1997 felony theft conviction for which he received two years at hard labor, a 2001 illegal possession of stolen things conviction for which he received one year at hard labor, a 2002 simple burglary conviction for which he received six years' hard labor, and a 2008 felony theft conviction for which he received eight years' hard labor. Thus, with his present offenses in 2016, Means would have qualified as a fifth-felony offender, and possibly received a sentence of 20 years to life in addition to the sentences for the remaining four present convictions.

This result would have obtained pursuant to La. R.S. 15:529.1(A)(4)(a), which governs habitual offender sentencing for fourth or subsequent felonies not constituting a crime of violence or sex offense. The PSI indicates Means' criminal record includes the following prior felony convictions: (1) felony theft, 1997; (2) illegal possession of stolen things, 2001; (3) simple burglary, 2002; (4) felony theft, 2008. The 10-year cleansing period could not have run as to any of these offenses, because less than 10 years passed between each such conviction as well as between the last such conviction and commission of the current offenses. La. R.S. 15:529.1(C).