Judgment rendered June 30, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,976-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                    Appellee

versus

FREDERICK DEWAYNE                     Appellant
JACKSON

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 222,275

Honorable Michael O. Craig, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By:  Peggy J. Sullivan

FREDERICK DEWAYNE JACKSON             Pro Se

J. SCHUYLER MARVIN                    Counsel for Appellee
District Attorney

JOHN M. LAWRENCE
ANDREW C. JACOBS
Assistant District Attorneys

* * * * *

Before GARRETT, HUNTER, and BODDIE (*Pro Tempore*), JJ.

**HUNTER, J.**

The defendant, Frederick Dewayne Jackson, was charged by bill of indictment with two counts of first degree murder, in violation of La. R.S. 14:30. Pursuant to a plea agreement, the defendant pled guilty to two counts of manslaughter, in violation of La. R.S. 14:31. Following a sentencing hearing, the defendant was sentenced to serve 30 years at hard labor on each count. The sentences were ordered to be served consecutively. For the following reasons, we affirm.

**FACTS**

In 2019, Shandrell Simoneaux, her two young children, and her mother, Maiesha Simoneaux, lived together in the Misty Hollow Apartment complex in Bossier City, Louisiana. The defendant, Frederick Dewayne Jackson, was the boyfriend of Shandrell and the father of her children. On January 9, 2019, the defendant shot Shandrell in front of the two children. Subsequently, the defendant shot Maiesha and fled the scene. Both women died as a result of their injuries. Shandrell was 22 years old; Maiesha was 40 years old.

The defendant, who was 22 years old, was soon identified as the assailant. He was arrested and charged with two counts of first degree murder. In his statement to police officers, the defendant admitted to shooting and killing both victims.

On January 27, 2020, the defendant accepted a plea agreement, pursuant to which he agreed to plead guilty to the lesser included offense of manslaughter, and sentencing would be left to the trial court's discretion. The trial court proceeded with the guilty plea colloquy and determined that the defendant was 22 years old, had completed some college classes, and

was not under the influence of alcohol or drugs at the time of the plea. The trial court advised the defendant that by pleading guilty, he would waive his right to a jury trial, his right to challenge the state's evidence against him, his right to confront and cross-examine witnesses against him, his right to call witnesses on his behalf, his right to testify, his right to remain silent, and his right to appeal his conviction. The defendant confirmed that he had discussed his rights and the potential penalty for his convictions with his attorney and that he understood the rights he was waiving. The defendant also confirmed that he was pleading guilty because he was guilty and not as a result of any threats, duress, or coercion.

The state provided the following factual basis for the guilty plea. On January 9, 2019, the defendant committed what would have been the first degree murders of Shandrell and Maiesha Simoneaux, in that he shot both women with the specific intent to kill. However, the shootings were committed in sudden passion or heat of blood, which is manslaughter, pursuant to La. R.S. 14:31. The firearm used to commit the murders was recovered by law enforcement officers, and forensic testing established that the defendant's DNA was found on the murder weapon. Additionally, the victims' DNA was found on one of the defendant's shoes, and he admitted to police officers that he intentionally shot and killed both women. Thereafter, the defendant confirmed in open court that the factual basis provided was substantially correct. The trial court accepted the defendant's guilty plea on both counts.

The defendant's sentencing hearing was conducted on July 10, 2020. The trial court recited the factual basis for the guilty pleas and noted that it had reviewed the defendant's presentence investigation report and letters

2

from the families of the defendant and the victims. The trial court also noted the defendant's criminal history: a 2015 felony conviction for simple burglary, and multiple felony arrests from 2013-2019, which had resulted in various misdemeanor convictions.

Thereafter, the trial court heard statements made on behalf of the defendant and the victims. The defendant's brother, Fredarius Jackson, and his aunt, Shontae Denise Worsham, advocated for leniency. They expressed their wishes that the defendant be released and allowed to return home to his family and his children. Jackson acknowledged that the defendant's children "don't have their mama no more," and opined that children "should still have their daddy." Worsham stated that she and the defendant enjoyed a close relationship and that she "would like him to be with his kids too and mother and brothers."

The defendant addressed the trial court. He apologized to the victims' family "for the pain [he] caused."

Lazarus Houston, the long-term boyfriend of the victim, Maiesha Simoneaux, made a statement on behalf of the victims, their family, and the children who had witnessed the killings. Houston opined that the defendant had already enjoyed "a break" in that he did not face the death penalty, and again when he was allowed to plead guilty to lesser charges. He also expressed that the defendant should not receive further "breaks" regarding his sentencing. Houston urged the trial court to sentence the defendant to the maximum penalty allowable by law.

The trial court then addressed the applicable mitigating and aggravating factors under the sentencing guidelines. As mitigating factors, the trial court considered that the defendant had shown remorse and

3

apologized to the families, and that he pled guilty, albeit to reduced charges. As aggravating factors, the trial court noted that the defendant shot and killed a mother and a grandmother, in front of two young children, a fact that would permanently impact them, even with the benefit of counseling. The trial court also recounted the defendant's assertion to police that he killed Shandrell in response to threats he claimed had been made against him, and he then killed Maiesha to cover up the fact that he had shot Shandrell. The trial court found that, even though the two killings were committed in the same time period, the killings were not part of the "same act," because one killing was done for revenge or protection, while the other was done to hide the first crime.

Further, the trial court found that any lesser sentence than those imposed would deprecate the seriousness and egregiousness of "the coldness" of the defendant's actions, which deprived the families of two people. The trial court sentenced the defendant to serve 30 years at hard labor on each count. Additionally, the trial court found that the killings were two separate acts, with two separate motives, and for two separate purposes, and therefore, the sentences were imposed to run consecutively to one another. The defendant was given credit for time served. The trial court also advised the defendant of the time delays to appeal his sentences and to seek post-conviction relief.

On July 27, 2020, the defendant filed a motion to reconsider sentence, arguing that the sentences were excessive because he was a "first felony offender" and because he was sentenced to "the maximum" sentences. Following a hearing on September 25, 2020, the trial court denied the

4

motion, noting that the sentences, 30 years on each count, were less than the maximum of 40 years.

The defendant appeals.

## DISCUSSION

The defendant contends his consecutive sentences were harsh and constitutionally excessive under the facts and circumstances of this case. He argues that the killings both arose from one course of conduct. He also asserts that in light of his age,[1] his "minimal" criminal history, and the fact that the multiple offenses were part of "one transaction or one course of conduct," the trial court should have imposed the sentences to run concurrently. Further, the defendant argues that under the imposed sentences, he will have no "meaningful" opportunity to be rehabilitated and be a productive member of society.

In opposition, the state argues that the defendant has received a substantial benefit because he did not face the death penalty, and he was allowed to plead guilty to the reduced charges of manslaughter instead of first degree murder. Therefore, the defendant's potential sentence on each count was significantly reduced from life imprisonment to a maximum of 40 years. Additionally, according to the state, the trial court imposed a sentence term of 30 years on each count, despite the "particularly heinous nature of the crimes." The state urges that the trial court was within its discretion to impose consecutive sentences because the defendant pled guilty to an offense which did not adequately describe his conduct and received a significant reduction in his sentence exposure under the guilty plea. Thus,

---

[1] The defendant was 22 years old when he committed the offenses; he was 23 years old when he pled guilty and was sentenced.

the state contends, the imposition of consecutive sentences was appropriate in this case, and the sentences do not shock the sense of justice.

La. R.S. 14:31(A) defines manslaughter as follows:

(1) A homicide which would be murder under either Article 30 (first degree murder)[2] or Article 30.1 (second degree murder),[3] but the offense is committed in sudden passion

---

[2] La. R.S. 14:30 provides, in pertinent part:

A. First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, second degree kidnapping, aggravated escape, aggravated arson, aggravated or first degree rape, forcible or second degree rape, aggravated burglary, armed robbery, assault by drive-by shooting, first degree robbery, second degree robbery, simple robbery, terrorism, cruelty to juveniles, or second degree cruelty to juveniles.
(2) When the offender has a specific intent to kill or to inflict great bodily harm upon a fireman, peace officer, or civilian employee of the Louisiana State Police Crime Laboratory or any other forensic laboratory engaged in the performance of his lawful duties, or when the specific intent to kill or to inflict great bodily harm is directly related to the victim's status as a fireman, peace officer, or civilian employee.
(3) When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person.
\*\*\*
C. (1) If the district attorney seeks a capital verdict, the offender shall be punished by death or life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, in accordance with the determination of the jury. The provisions of Code of Criminal Procedure Article 782 relative to cases in which punishment may be capital shall apply.

(2) If the district attorney does not seek a capital verdict, the offender shall be punished by life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The provisions of Code of Criminal Procedure Article 782 relative to cases in which punishment is necessarily confinement at hard labor shall apply.

[3] La. R.S. 14:30.1 provides:

A.  Second degree murder is the killing of a human being:

(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated or first degree rape, forcible or second degree rape, aggravated arson, aggravated burglary, aggravated kidnapping, second degree kidnapping, aggravated escape, assault by drive-by shooting, armed robbery, first degree robbery, second degree robbery, simple robbery, cruelty to juveniles, second degree cruelty to juveniles, or

6

or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or

(2) A homicide committed, without any intent to cause death or great bodily harm.

(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or

(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Article 30 or 30.1.

Whoever commits manslaughter shall be imprisoned at hard labor for not more than 40 years.  La. R.S. 14:31(B).

An excessive sentence claim is reviewed by examining whether the trial court adequately considered the guidelines established in La. C. Cr. P. art. 894.1, and whether the sentence is constitutionally excessive.  *State v. Wing*, 51,857 (La. App. 2 Cir. 2/28/18), 246 So. 3d 711.  A review of the sentencing guidelines does not require a listing of every aggravating or mitigating circumstance.  *State v. Kelly*, 52,731 (La. App. 2 Cir. 6/26/19), 277 So. 3d 855, *writ denied*, 19-01845 (La. 6/3/20), 296 So. 3d 1071; *State v. Boehm*, 51,229 (La. App. 2 Cir. 4/5/17), 217 So. 3d 596; *State v. Cunningham*, 46,664 (La. App. 2 Cir. 11/2/11), 77 So. 3d 477.

terrorism, even though he has no intent to kill or to inflict great bodily harm.

***

B. Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.

When the defendant's motion to reconsider sentence raises only a claim that the sentence imposed was constitutionally excessive, review of the sentence on appeal is restricted to that claim. La. C. Cr. P. art. 881.1; *State v. Sewell,* 53,571 (La. App. 2 Cir. 11/18/20), 307 So. 3d 362. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense and is nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bell*, 53,712 (La. App. 2 Cir. 1/13/21), 310 So. 3d 307. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Wing*, *supra*.

The trial court must state for the record the consideration and the factual basis for the sentence imposed. La. C. Cr. P. art. 894.1(C). The court must consider the defendant's personal history, the defendant's criminal record, the seriousness of the offense, and the likelihood of rehabilitation, but there is no requirement that specific matters be given any particular weight at sentencing. *State v. Boehm*, *supra*. All convictions and all prior criminal activity may be considered as well as other evidence normally excluded from the trial. *State v. Reese*, 49,849 (La. App. 2 Cir. 5/20/15), 166 So. 3d 1175, *writ denied*, 15-1236 (La. 6/3/16), 192 So. 3d 760.

The trial court has wide discretion in imposing sentence within the statutory limits, so absent a showing of an abuse of that discretion, a sentence will not be set aside as excessive. *State v. West*, 53,526 (La. App. 2 Cir. 6/24/20), 297 So. 3d 1081; *State v. Mandigo*, 48,801 (La. App. 2 Cir.

8

2/26/14), 136 So. 3d 292, *writ denied*, 14-0630 (La. 10/24/14), 151 So. 3d 600.  The reviewing court does not determine whether another sentence would have been more appropriate, but whether the trial court abused its discretion.  *State v. Dale*, 53,736 (La. App. 2 Cir. 1/13/21), 309 So. 3d 1031.

In cases where the defendant has pled guilty to an offense which does not adequately describe his conduct, the general rule does not apply and the trial court has great discretion in imposing the maximum sentence possible for the pled offense.  *State v. Black,* 28,100 (La. App. 2 Cir. 2/28/96), 669 So. 2d 667, *writ denied*, 96-0836 (La. 9/20/96), 679 So. 2d 430.  This is particularly true in cases where a significant reduction in potential exposure to confinement has been obtained and the offense involves violence upon a victim.  *Id.*

In cases involving multiple offenses and sentences, the trial court has limited discretion to order that the multiple sentences are to be served concurrently or consecutively.  *State v. Nixon*, 51,319 (La. App. 2 Cir. 5/19/17), 222 So. 3d 123, *writ denied*, 17-0966 (La. 4/27/18), 239 So. 3d 836.  Regarding concurrent and consecutive sentences, La. C. Cr. P. art. 883 provides as follows:

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively.  Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.  In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.

Concurrent sentences arising out of a single course of conduct are not mandatory, and consecutive sentences under those circumstances are not

necessarily excessive. *State v. Means*, 51,926 (La. App. 2 Cir. 5/23/18), 246 So. 3d 866, 870; *State v. Lynn*, 50,575 (La. App. 2 Cir. 5/18/16), 196 So. 3d 607. It is within the court's discretion to make sentences consecutive rather than concurrent. *State v. Nixon*, *supra*; *State v. Robinson*, 49,677 (La. App. 2 Cir. 4/15/15), 163 So. 3d 829, *writ denied*, 15-0924 (La. 4/15/16), 191 So. 3d 1034. For example, the sentencing court may impose consecutive sentences in cases where the offender's past criminality or other circumstances justify treating him as a grave risk to the safety of the community. *State v. Walker*, 00-3200 (La. 10/12/01), 799 So. 2d 461.

When imposing consecutive sentences, the trial court must acknowledge the sentencing guidelines established in La. C. Cr. P. art. 894.1, recite factors for the sentences which were supported by the record, and show that consecutive sentences were warranted. *State v. Wing*, *supra*. The imposition of consecutive sentences for multiple offenses arising from a single act or scheme must be justified by the evidence of record and the trial court must state what factors were considered in reaching the determination to impose consecutive terms. *State v. Butler*, 51,922 (La. App. 2 Cir. 4/11/18), 247 So. 3d 1006, 1011; *State v. Wing*, *supra*.

Among the factors to be considered are the defendant's criminal history, the gravity or dangerousness of the offense, the viciousness of the crimes, the harm done to the victims, whether the defendant constitutes an unusual risk of danger to the public, the potential for the defendant's rehabilitation, and whether the defendant has received a benefit from a plea bargain. *State v. Nelson*, 44,762 (La. App. 2 Cir. 10/28/09), 25 So. 3d 905; *State v. Austin*, 49,061 (La. App. 2 Cir. 7/16/14), 146 So. 3d 716, *writ denied*, 14-2323 (La. 9/18/15), 178 So. 3d 140. The failure to articulate

specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. *State v. Nelson*, *supra*.

After reviewing this record, we find no abuse of discretion with regard to the sentences imposed. The 30-year sentences were within statutory limits, and therefore, were not statutorily excessive. Further, the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1, and considered the aggravating and mitigating circumstances in this case. The court noted the defendant's criminal history and considered the gravity of the defendant's offenses and the impact his crimes had upon the victims and their family. Additionally, the court reviewed letters and testimony by family members regarding the defendant and the victims. The letters and testimony provided on behalf of the defendant urged for leniency. Conversely, the letters and testimony given on behalf of the victims and their families advocated for severe sentences. The trial court also noted that the defendant had pled guilty and expressed remorse.

The trial court explained that its decision to impose consecutive sentences was based on the defendant's actions. The court noted that, by the defendant's own admission, he shot Shandrell with the intent to kill her, in the presence of their two young children. The defendant also admitted that he shot and killed Maiesha solely to cover up the first killing. In his statement, the defendant acknowledged that his actions caused his young children to lose both of their parents at the same time. Although the defendant confessed and pled guilty, he gained a substantial reduction in his sentence exposure, from a potential life sentence to a potential of 40 years

11

on each count. The sentences imposed are, in fact, ten years less than the maximum.

Moreover, we find that the trial court did not abuse its discretion in imposing consecutive sentences. The consecutive sentences were justified by the evidence in the record and the factors stated by the trial court at sentencing and are not disproportionate to the seriousness of the offenses. The defendant, a convicted felon, armed himself with a firearm, in the presence of his two young children. He then used that weapon to shoot and kill the children's mother and grandmother. The defendant's actions manifested deliberate cruelty to the victims and the young children. Given the egregious nature of these offenses, the consecutive sentences imposed reflect the extreme danger and gravity of the defendant's actions. Further, if there was anything prohibiting consecutive sentences, then it was a level of exposure the defendant and his attorney should have anticipated as part of any plea deal pursuant to law.

The sentences imposed were tailored to the offender and the offenses and do not shock the sense of justice. Accordingly, we find that the defendant's sentences are not constitutionally excessive, and the imposition of consecutive sentences, under the facts of this case, does not constitute an abuse of the trial court's discretion. This claim is without merit.

### CONCLUSION

For the foregoing reasons, the defendant's convictions and sentences are affirmed.

**CONVICTIONS AFFIRMED; SENTENCES AFFIRMED.**

12