Judgment rendered January 15, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,276-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                    Appellee

versus

TONYA AVANT SANDIFER                  Appellant

* * * * *

Appealed from the
Eighth Judicial District Court for the
Parish of Winn, Louisiana
Trial Court No. 43,909

Honorable Jacque D. Derr, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Peggy J. Sullivan

R. CHRISTOPHER NEVILS                 Counsel for Appellee
District Attorney

COLE B. SMITH
Assistant District Attorney

* * * * *

Before MOORE, GARRETT, and COX, JJ.

COX, J., concurs in part and dissents in part with written reasons.

**MOORE, J.**

After a jury trial, the defendant, Tonya Sandifer, was convicted of distribution of methamphetamine, a Schedule II CDS, and attempted distribution of methamphetamine. The court imposed consecutive sentences of 25 years and 15 years at hard labor, and denied the defendant's motion to reconsider sentence. Defendant appealed. For the reasons that follow, we affirm the conviction, vacate the sentence, and remand to the trial court with instructions.

## FACTS

Tonya Avant Sandifer was charged by bill of information with distribution of methamphetamine, a Schedule II CDS, in violation of La. R.S. 40:967A, and attempted distribution of methamphetamine, a Schedule II CDS, in violation of La. R.S. 40:967A and 14:27. These offenses were committed on May 10 and 16, 2016.

The Winn Parish Sheriff's Office and the Louisiana State Police Department ("LSP") were investigating drug crimes in Winn Parish. Raymond Durbin was employed by the police as a confidential informant ("CI") to confect a drug deal between Sandifer and an undercover LSP officer, Sergeant William Moore. On May 10, 2016, Sgt. Moore was working undercover using the alias, "Luke," when he met Sandifer, Durbin and Misty Holmes at Gum Springs Park in Winn Parish. Durbin introduced Sandifer to "Luke," and Sandifer entered the passenger's side of Luke's vehicle. Sandifer sold the undercover officer one ounce of methamphetamine (approximately 28 grams) for $700. The methamphetamine from the purchase was transferred to the North Louisiana Crime Lab.

Sandifer and "Luke" exchanged cell phone numbers and texted one another over the next few days. Through a text message, "Luke" requested another drug buy in the amount of four ounces of methamphetamine. Sandifer checked with her supplier and informed the undercover agent that the price would be $2,450. He agreed to the price, and the two agreed to meet at Gum Springs on May 16, 2016, to complete the transaction.

Due to the risk associated with large drug deals, Officer Patrick Deshautelle, the LSP case agent in charge of the operation, decided to intercept the drugs before they were delivered to Sandifer. On May 16, 2016, Ramonta Jackson, Sandifer's alleged supplier, was apprehended by a state trooper while Jackson was en route to meet Sandifer. Some four ounces of a substance was recovered from Jackson's vehicle; it later tested positive for methamphetamine.

Luke (Sgt. Moore) and Sandifer met on May 16, 2016, as scheduled, but Sandifer informed him that her supplier had been stopped by a state trooper. Sandifer attempted to find a second supplier, but was unable to procure any drugs to sell to the agent. Three months later, Sandifer was arrested on August 10, 2016. At trial, Sandifer testified that Durbin was living with her and that it was his idea to sell drugs, and in fact it was Durbin who introduced her to the undercover officer she knew as Luke.

The jury unanimously found Sandifer guilty of distribution of methamphetamine and, by an 11-1 vote, found her guilty of attempted distribution.

On February 19, 2019, Sandifer appeared for sentencing. The court stated that it had reviewed the sentencing guidelines of La. C. Cr. P. art. 894.1, and concluded that it should impose a sentence of imprisonment

2

because any other sentence would not adequately reflect the seriousness of the offenses. The court stated that illegal drugs are the source of most of the evil that occurs in the world. It noted the destructive effect drugs have on individual lives and families, as drug use tears at the fabric of our society. The court also opined that distribution of drugs is a far more egregious offense than mere possession, and, in this case, the defendant was convicted of distribution and attempted distribution of large quantities of methamphetamine. Finding no mitigating factors in the case, the court concluded that the facts of the case warrant substantial terms of imprisonment. Accordingly, the court sentenced Sandifer to 25 years at hard labor for the distribution conviction and 15 years at hard labor for the attempted distribution conviction. The court ordered that the sentences were to be served consecutively.

Sandifer filed a motion to reconsider sentence on grounds that the sentence is excessive and not commensurate with the crimes for which the defendant was convicted. The trial court denied the motion, stating that the sentences were "correct."

This appeal followed.

## DISCUSSION

Sandifer filed three assignments of error, all urging that the sentences imposed are excessive. By the first assignment, Sandifer alleges the sentences imposed are unconstitutionally harsh and excessive given the facts and circumstances of this case; by the second assignment, that the trial court failed to state an adequate basis for the sentences; and, by the third assignment, that the court erred when it denied her motion to reconsider the sentences.

3

Sandifer argues that the record contains none of her personal information. Instead of discussing the facts of the case during sentencing, the trial court, she argues, went on a tirade regarding the evils of drugs in society. Sandifer contends that the trial court failed to state, for the record, the reasons for imposing such a harsh sentence. Further, the court failed to consider the role that Raymond Durbin played in Sandifer's decision to sell drugs. Sandifer explains that the court's announced personal feelings about drugs in society do not constitute a sufficient basis for the sentences imposed.

Additionally, Sandifer notes that the trial court failed to justify the imposition of consecutive sentences for the two offenses which arose out of the same conduct and occurred closely in time. *State v. Nixon*, 51,319 (La. App. 2 Cir. 5/19/17), 222 So. 3d 123, *writ denied*, 17-0966 (La. 4/27/18), 239 So. 3d 836. Sandifer contends that she was given a maximum sentence and a near-maximum sentence ordered to run consecutively, even though the offenses were committed close in time and arose out of the same course of conduct. The record fails to justify the consecutive sentences imposed, she argues.

Appellate courts utilize a two-pronged analysis in reviewing a sentence to determine whether it is excessive. First, the record must show that the trial court considered the factors in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 16-0959 (La. 5/1/17), 219 So. 3d 332. The goal of La. C. Cr. P. art. 894.1 is for the court to

articulate the factual basis for the sentence, and not simply mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. DeBerry, supra.* The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones,* 398 So. 2d 1049 (La. 1981); *State v. DeBerry, supra.* There is no requirement that specific matters be given any particular weight at sentencing. *State v. DeBerry, supra*; *State v. Shumaker*, 41,547 (La. App. 2 Cir. 12/13/06), 945 So. 2d 277, *writ denied*, 07-0144 (La. 9/28/07), 964 So. 2d 351.

In the second prong of the analysis, the court determines whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bonanno*, 384 So. 2d 355 (La. 1980). A grossly disproportionate sentence shocks the sense of justice when the crime and punishment are viewed in light of the harm done to society. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Meadows*, 51,843 (La. App. 2 Cir. 1/10/18), 246 So. 3d 639, *writ denied*, 18-0259 (La. 10/29/18), 254 So. 3d 1208.

The trial court has wide discretion to impose a sentence within the statutory limits, and the sentence imposed will not be set aside as excessive absent a manifest abuse of that discretion. *State v. Nixon, supra*; *State v.*

5

*Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Diaz*, 46,750 (La. App. 2 Cir. 12/14/11), 81 So. 3d 228. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Williams, supra*; *State v. Free*, 46,894 (La. App. 2 Cir. 1/25/12), 86 So. 3d 29.

The law regarding whether two or more sentences imposed should be served concurrently or consecutively is governed by La. C. Cr. P. art. 883, which reads:

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.

We have previously stated that in cases involving multiple offenses and sentences, the trial court has limited discretion to order that the multiple sentences are to be served concurrently or consecutively. *State v. Nixon, supra*; *State v. Allen*, 52,318 (La. App. 2 Cir. 11/14/18), 260 So. 3d 703. Concurrent sentences arising out of a single course of conduct are not mandatory, and consecutive sentences under those circumstances are not necessarily excessive, *State v. Nixon, supra; State v. Harris*, 52,663 (La. App. 2 Cir. 8/14/19), 277 So. 3d 912; *State v. Hebert*, 50,163 (La. App. 2 Cir. 11/18/15), 181 So. 3d 795. However, a judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence or record. Accordingly, when consecutive sentences are imposed, the court shall state the factors

6

considered and its reasons for the consecutive terms. Among the factors to be considered are: (1) the defendant's criminal history; (2) the gravity or dangerousness of the offense; (3) the viciousness of the crimes; (4) the harm done to the victims; (5) whether the defendant constitutes an unusual risk of danger to the public; and (6) the potential for the defendant's rehabilitation. The failure to articulate specific reasons for consecutive sentences does not require remand, however, if the record provides an adequate factual basis to support consecutive sentences. *Nixon, supra.*

As a general rule, maximum or near-maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Cotten*, 50,747 (La. App. 2 Cir. 8/10/16), 201 So. 3d 299. The trial court is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So. 2d 957, *cert. denied*, 519 U.S. 1043, 117 S. Ct. 615, 136 L. Ed. 2d 539 (1996).

Finally, when determining whether a defendant's sentence is excessive, a reviewing court should compare the defendant's punishment with the sentences imposed for similar crimes by the same court or other courts. *State v. Johnston*, 50,706 (La. App. 2 Cir. 6/22/16), 198 So. 3d 151, *writ granted on other grounds*, 16-1460 (La. 65/17), 221 So.3d 46; *State v. Ferguson*, 44,009 (La. App. 2 Cir. 2/25/09), 4 So. 3d 315.

In this case, we note that the record contains little to no information about Sandifer, including her personal life, family, education, and employment background. A sketchy presentence investigation ("PSI") gives little more than her name, date of birth, and first offender status. Sandifer is currently 41 years old. She has no prior felony convictions and no prior

misdemeanor convictions. The PSI shows that a misdemeanor charge of domestic abuse battery was dismissed in 2009, and misdemeanor charges of criminal trespass and two possession of drug paraphernalia charges are pending. Additionally, the PSI reports an arrest made on July 8, 2017, for possession of a Schedule II CDS, methamphetamine, after her arrest on the instant offenses.

According to the transcripts of several pretrial plea hearings, the state apparently offered Sandifer a plea agreement whereby it would file no habitual offender bill and, possibly, offered a sentence of 9 years. Sandifer rejected all the state's plea offers; instead, she chose to go to trial.

At trial, Sandifer testified that she had lived with Raymond Durbin, the confidential informant who set up the drug deal, prior to this offense. She said that her electricity had been shut off, and she could not afford the required deposit to turn it back on. She knew that Durbin had engaged in drug activity in the past, and was not surprised when he suggested introducing her to his friends involved in drug transactions to raise money. The friend to whom she was introduced was a man by the name "Luke," who, unknown to her, was actually a police undercover agent, Sgt. William Moore. Sandifer testified that Durbin insisted that she actually execute the transaction because she needed the experience in case Luke might need something (more drugs) while he was not available or at work. She admitted that she did the actual transactions, but she insisted that Durbin was the person setting up the deals. Of course, the jury found Sandifer guilty as charged.

In 2016, the sentencing range for distribution of schedule II CDS, methamphetamine, was a minimum of 2 years but not more than 30 years'

imprisonment at hard labor and a fine of up to $50,000. La. R.S. 40:967(B)(1) (2016). The sentencing range for attempted distribution of schedule II CDS, methamphetamine, was a fine or imprisonment or both, not exceeding one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the completed crime, in this case, 15 years. La. R.S. 40:967(B)(1) (2016) and 14:27.

At sentencing, the court disagreed with Sandifer's characterization of herself as a kind of naive, surrogate "middleman" to the drug transactions, carrying out the deal for Durbin. Contrary to Sandifer's account, the court viewed the evidence as showing that Sandifer was not a rookie drug dealer, and these transactions were not Sandifer's "first rodeo," as she had claimed. The court vigorously expressed its view that illegal drugs are a scourge responsible for most of the evil in the world. The court said that it viewed drug dealers as far more culpable than drug users. It sentenced Sandifer to a near-maximum term of 25 years for distribution of one ounce of methamphetamine and imposed the maximum sentence of 15 years for attempted distribution of four ounces of methamphetamine. Additionally, the court made these consecutive, making the total term of imprisonment of 40 years tantamount to a life sentence for the 41-year-old defendant.

In this case, Sandifer was a first felony offender, and while she perhaps served as a "middleman" in the distribution scheme, she clearly knew what she was doing to make money. She sold approximately 28 grams of methamphetamine, and subsequently attempted to sell approximately 113 grams of methamphetamine.

On review, we conclude that the sentences imposed by the court are indeed very severe, particularly in view of the legislature's intent to lessen

9

the penalties for certain drug crimes by enacting by 2017 La. Acts 281, § 2. Act 281 reduced the maximum sentencing exposure for the instant offenses to 20 years instead of 30 and, thus, reduced the maximum for attempted distribution to 10 years instead of 15.[1]  However, even though Sandifer was sentenced after the amendment was in effect for offenses committed after 2017, the court correctly applied the 2016 version of the statute when the offenses were committed.  It was, therefore, within the court's discretion to impose a near-maximum sentence of 25 years for distribution and the maximum 15 years for attempted distribution.  When we consider the pernicious nature of the particular illegal drug sold for distribution in this case, methamphetamine, the devastating effect it has on society, and the fact that the defendant, who at age 41 cannot attribute her behavior to bad judgment and youthful indiscretion, we find that the trial court did not abuse its discretion by imposing these severe sentences.

On the other hand, under *State v. Nixon, supra*, we conclude that this record fails to provide an adequate factual basis to support consecutive sentences.  Concurrent sentences are generally appropriate when the offenses arise from a single course of conduct or a common scheme or plan.  Sandifer committed two offenses, but they arose out of the same course of criminal conduct and involved a single individual.  Certainly from the perspective of the LSP, this was actually a single investigation targeting a particular drug dealer by initially gaining her trust with a small deal, and then immediately following it by a larger deal.  The undercover agent, Luke, kept contact with Sandifer over the next few days after the first deal to set up

---

[1] La. R.S. 40:967(B)(1) (effective 2017), concerning sales between 28 grams and 200 grams.

10

the second deal. Sandifer sold one ounce of methamphetamine to him, and then attempted to comply with his request to sell him more within a week.

While it is within the court's discretion to make sentences consecutive rather than concurrent, a judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence or record. The record is devoid of particular justification for the consecutive sentences in this case.

In *State v. Wing,* 51,857 (La. App. 2 Cir. 2/28/18), 246 So. 3d 711, the defendant was convicted of two counts of simple burglary and sentenced to serve eight years at hard labor on each count, consecutively. On review, we found that the sparse record made at sentencing did not supply a sufficient factual basis to support consecutive sentences. We stated:

> In ordering that the sentences were to be served consecutively, it is not clear from the record whether the trial court specifically considered whether the offenses were the same act or transaction or part of a common scheme or plan. While we make no judgment on this issue, if they were part of a common scheme or plan, the trial court is required to specify reasons for ordering the sentences to be served consecutively. *Id.* at 717.

In this case, the trial court did not specify any reasons for ordering Sandifer's sentences be served consecutively. Our review of the record finds that concurrent sentences would be appropriate in this case since the offenses arose out of a single course of conduct, and since maximum and near-maximum sentences were imposed on this first offender. For this reason, we vacate the sentences and remand to the trial court for resentencing with concurrent sentences, or alternatively, if the court still wishes to impose consecutive sentences, to specify the reasons why consecutive sentences are warranted.

11

**CONCLUSION**

For the foregoing reasons, we affirm the conviction of the defendant, Tonya Avant Sandifer.  However, we conclude that the record does not support the imposition of consecutive sentences in this case.  Therefore, we vacate the sentences and remand to the trial court for resentencing.

**CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED.**

**COX, J., concurs in part and dissents in part with written reasons.**

I agree with the majority's opinion in all respects, except for the ruling on the consecutive sentences. I do not reach the conclusion that consecutive sentences are not appropriate in this case. The trial court has the discretion to determine whether the sentences should be concurrent or consecutive. I am not making a judgment on whether or not consecutive sentences are appropriate at this juncture. If the trial court wishes to impose consecutive sentences in this case, the trial court will need to specify the reasons why consecutive sentences are warranted in light of the cases cited by the majority. Then, after receiving the trial court's reasons for the consecutive sentences, this Court could properly review whether or not the trial court erred in that regard.

I agree to affirm the conviction of the defendant, vacate the sentence, and remand to the trial court for resentencing pursuant to the cases outlined in the majority's opinion. However, I respectfully dissent and make no ruling on whether concurrent or consecutive sentences are appropriate in this case.