Judgment rendered October 2, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,840-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

DAVID D. WINDHAM                            Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 380,099

Honorable Christopher T. Victory, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Douglas Lee Harville

JAMES E. STEWART, SR.                Counsel for Appellee
District Attorney

REBECCA ARMAND EDWARDS
SAMUEL S. CRICHTON
MICHAEL T. ANDERSON
Assistant District Attorneys

* * * * *

Before COX, HUNTER, and MARCOTTE, JJ.

**COX, J.**

This case arises out of the First Judicial District Court, Caddo Parish, Louisiana. Defendant, David D. Windham ("Windham"), was convicted of two counts of resisting an officer with force or violence in violation of La. R.S. 14:108.2. Following a unanimous jury verdict of guilty for both counts, Windham was sentenced to three years at hard labor for both counts, to be served consecutively, and ordered to pay a $1,000 fine for each count. For the following reasons, we affirm Windham's conviction and sentence.

## FACTS

On June 19, 2023, by an amended bill of information, the State charged Windham with two counts of resisting an officer with force or violence in violation of La. R.S. 14:108.2. Windham pled not guilty to both counts. A jury trial was held on September 21, 2023, where the following testimony was presented:

Constable Melvin Presley ("Constable Presley") testified that he was elected as constable in Caddo Parish for Ward 3 and has served in that position for the last 12 years, where he conducts traffic stops and other tasks in his official capacity. Constable Presley stated that the boundaries of his jurisdiction are marked by "the 12-mile Bayou on North Market and goes to Caddo Lake, to the Red River, to the state line." He explained that those boundaries included the townships of Blanchard, Longwood, and Mooringsport.

In recalling the events of the instant offense, Constable Presley testified that on December 8, 2020, he and his deputy, Constable Samuel Yount ("Constable Yount") left a meeting for the Fraternal Order of Police in the Cross Lake area. Constable Presley explained that although he was in

plain clothes, he had his badge and was in a marked vehicle equipped with lights and sirens. He then stated that when he is in his jurisdiction, he is "on duty 24-7." Constable Presley testified that he drove southbound on Blanchard Furrh Road, toward Blanchard, and that as he began to make a left turn onto Billie Lee Drive,[1] another vehicle almost struck him. Constable Presley recalled that the vehicle traveled at a high rate of speed, and it seemed as though the driver was distracted and unaware of what happened.

Constable Presley stated that if he had not been paying attention and had not moved his vehicle out of the way, it was likely the other vehicle would have struck his driver's door. He stated that at that point, he activated his lights and followed the vehicle, where he observed the driver make several traffic violations including speeding, reaching up to 70 miles an hour in a 55-mile-an-hour, crossing over into the center line of the highway, and generally weaving as he drove.

Constable Presley explained that as he followed behind the vehicle, he noticed the driver had the interior vehicle lights on and was doing something in the passenger seat. Constable Presley further stated that he followed the vehicle for almost a quarter of a mile before the driver finally stopped. He explained that as he approached the vehicle, he stood near the left rear of the driver's vehicle, and Constable Yount stood by the rear passenger side of the vehicle. He stated that the driver approached him and asked, "What do you need?" Constable Presley explained that he then identified himself and asked if the driver was okay or needed help, to which the driver responded,

---

[1] The incident report generated for this matter indicates that the intersection was between Par Road 4/Blanchard Furrh Road and Billie Lee Lane.

"You're a constable?" and "F*** a constable," before he shoved Constable Presley in the chest with both hands.

Constable Presley stated that after this, the driver then went back to his vehicle and put the vehicle in gear. Constable Presley stated that he managed to get a hold of the driver before he drove off to try and pull him out of the vehicle, but the driver took off anyway, leaving him hanging out of the vehicle. Constable Presley testified that he was in the vehicle from the waist up and was dragged approximately two or three yards before the vehicle finally came to a stop. He explained that during this time, the driver struggled against him and continued to resist until Constable Yount was able to grab the driver and pull him out of the vehicle. Constable Presley stated that he and Constable Yount struggled to restrain the driver for about two or three minutes because of his actions. Constable Presley stated that approximately six or ten minutes later, a Caddo Parish Sheriff's deputy arrived to transport the driver.

On cross-examination, Constable Presley clarified that his incident report did not reflect that he was wearing his badge because it was standard procedure to wear it, and did not feel the need to include this information. Constable Presley also stated that although he did not use his radar gun to determine the driver's precise speed, he was certified in 1979 by the Shreveport Police Department to determine the speed of a vehicle and "ran radar for three years in selective enforcement on motorcycles and in radar cars." Constable Presley reiterated that he stopped the driver because of the near collision, that there were no tags on the vehicle, and because the driver was speeding, and driving erratically. Constable Presley explained again how he had to climb in the driver's vehicle and the ensuing struggle he and

3

Constable Yount endured to arrest him. He then stated that once the driver was taken into custody, he was originally charged with speeding and battery of an officer.

Constable Presley then stated that he wasn't issued a police unit and was required to pay for the vehicle himself and have his official decals put on it. He then identified a picture of his patrol unit. Constable Presley then admitted that he was subject to a few disciplinary matters, including an incident where he "crossed into another district" without permission from his supervisor. He then testified that normally, when he makes a stop, he is in uniform but has effected arrests and stops in plain clothes as well. Constable Presley also stated that he usually presents his identification card but was unable to do so in this case because the driver shoved and fled before he had the opportunity to do so. On redirect, Constable Presley clarified that he also had to increase his speed to catch up to the driver, and his speedometer reflected that he reached approximately 70 miles per hour during the chase.

Next, Constable Yount testified that he worked for the Blanchard Police Department and served as a constable for Ward 3 in Caddo Parish. He testified that on December 8, 2020, he and Constable Presley left a meeting together in a marked vehicle equipped with lights and the words "Constable" on it. Constable Yount explained that as Constable Presley attempted to make a left turn from Blanchard Furrh Road, a vehicle nearly hit them. Constable Yount stated that to avoid being hit, Constable Presley was forced to yank the wheel to the right. Constable Yount stated that the sudden motion caused him to slam into his passenger door. He then recalled seeing the other driver leave the road, drive down into a ditch, and then back

4

onto the road.  Constable Yount noted that they had to accelerate to catch up with the driver and estimated that the other driver traveled around 65 to 70 miles per hour in a 55-mile-an-hour zone.

Constable Yount testified that after he noticed that the vehicle did not have any tags, Constable Presley activated his lights and pursued the vehicle. He then confirmed that a traffic stop can be lawfully executed for missing vehicle tags.  Constable Yount stated that the vehicle did not come to an immediate stop, and the driver "was all over the road and kept reaching to the passenger side of the vehicle."  Constable Yount stated that when the vehicle finally stopped, he approached the passenger side of the vehicle to see if there was a passenger inside, and Constable Presley exited and approached the driver's side of the vehicle.  Constable Yount stated that although he could not see if Constable Presley had his badge on when he exited the vehicle, he knew that Constable Presley always carried his badge. Constable Yount stated that he wore his badge on his holster, and that it was easily identifiable.

Constable Yount testified that as Constable Presley approached the vehicle, the driver exited his vehicle and went immediately toward Constable Presley.  Constable Yount explained that because the driver moved quickly, Constable Yount went toward the passenger door to ensure there were no weapons or other passengers that would be a safety hazard. Constable Yount stated that as he checked through the front windshield, Constable Presley identified himself to the defendant, and in response, the defendant stated, "F*** a constable," and then shoved Constable Presley in the chest before getting back in the vehicle.  Constable Yount explained that as he was coming around the front of the vehicle, the driver "threw the car in

5

gear and it lunged toward me." He stated that at that time, he drew his weapon, but when he noticed Constable Presley was halfway in the vehicle, attempting to shut the ignition off, he withdrew his weapon. He stated that he attempted to assist; however, the vehicle accelerated, went past him, caught him in the left knee with the door, and spun him around.

Constable Yount testified that when he got oriented, he saw Constable Presley being pulled down the road and got back in the patrol unit to follow. Constable Yount stated that the vehicle eventually came to an abrupt stop, and when he exited the vehicle to assist, he heard Constable Presley repeatedly state, "stop resisting." Constable Yount stated that after he pulled the defendant out of the vehicle, the defendant began to fight him and continued to do so even when he was pinned against the vehicle. Constable Yount stated that the defendant continued to resist until he drew his weapon, to which the defendant then apologized. Constable Yount noted that when another deputy arrived to assist, the defendant still struggled some, but that it was not as violent, and stopped resisting only when he was handcuffed.

On cross-examination, Constable Yount stated that as a deputy constable, he was required to be certified every two years. He explained that on the date of the offense he had not received his certification, but he had one year from date of hire to receive his certifications, so he was still authorized to execute detentions and arrests but with supervision from another officer. Constable Yount reiterated that both he and Constable Presley were in plain clothes, but his badge was still visible. On redirect, Constable Presley stated that at no point did the defendant ever ask for either officer to identify themselves, and if asked, either would have provided further information beyond the initial identification.

6

Next Deputy Jon Daughtery ("Deputy Daughtery"), of the Caddo Parish Sheriff's Office, testified that he was dispatched to assist Constable Presley and Constable Yount following the detention of an erratic and combative driver. He stated that when he arrived, he saw both officers restraining the defendant against a vehicle. Deputy Daughtery recalled that he saw both officers' badges when he handcuffed the defendant before transporting him to Caddo Correctional Center. On cross-examination, Deputy Daughtery stated that while he remembered seeing both officers wearing their badges, he could not recall where the badges were located. He also clarified that since he arrived after the incident, he did not witness the events which led to the detention. Deputy Daughtery stated that he could not recall if either officer was injured, and that his focus was on getting the defendant handcuffed.

Deputy Daughtery stated that when he arrived the defendant was agitated and resisting both officers, but the defendant was calm by the time he was handcuffed. He then recalled that the defendant stated that he did not know that "constables were the real police." Deputy Daughtery explained that constables are empowered with the ability to conduct arrests and detentions and that he has assisted constables in the past.

Finally, Rodger Swan ("Swan"), an investigator for the public defender's officer, testified. Defense counsel then introduced photographs of Constable Presley's vehicle with the lights activated. Swan explained that the pictures depicted the vehicle from the front, rear, and side views of the vehicle. He stated that the word "constable" is displayed on the tailgate and an emblem of the State of Louisiana is on the driver's door. Swan also

7

described another picture of radar equipment mounted on the inside of the vehicle with the light on projecting the word "patrol" below it.

At the close of testimony, the jury returned a unanimous verdict of guilty for both counts. Following a hearing, the defendant's motions for post-verdict judgment of acquittal and motion for new trial were both denied. Windham waived sentencing delays, and the trial court sentenced him to pay a fine of $1,000 on each count and to serve three years at hard labor for each count, with both sentences to be served consecutively. This appeal followed.

## DISCUSSION

### *Sufficiency of the Evidence*

By his first assignment of error, Windham argues that the State presented insufficient evidence to convict him of resisting an officer with force or violence. Specifically, Windham claims that the Blanchard Furrh Road and Billie Lee Lane intersection, where the incident occurred, is outside the geographical boundaries of Ward 3 where Constable Presley and Constable Yount are limited for purposes of exercising their authority. In support, Windham included a copy of a map in his brief that he claims reflects the intersection of Blanchard Furrh Road and Billie Lee Lane, allegedly showing that these roads lie outside Ward 3.

From this, Windham argues that when the incident occurred, neither constable had the authority to effect the arrest and they were not acting in the performance of their official duties, so he could not have resisted arrest while either officer was acting in the official performance of their duties.

In response, the State argues that the map included in Windham's brief does not accurately and readily identify whether the intersection of

8

Blanchard Furrh Road and Billie Lee Lane is within Ward 3's jurisdiction. It requests instead that this Court take judicial notice of the official map of Ward 3 located on the Caddo Parish Public Works website because it is readily available and accurately reflects that the intersection is located within Ward 3.

The standard of appellate review for a sufficiency of the evidence claim in a criminal case is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L.Ed. 2d 248 (2004). The *Jackson* standard, now legislatively embodied in La. C. Cr. P. art 821, does not afford the appellate court with a means to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Steines*, 51,698 (La. App. 2 Cir. 11/15/17), 245 So. 3d 224, *writ denied*, 17-2174 (La. 10/8/18), 253 So. 3d 797.

The *Jackson* standard also applies in cases involving both direct and circumstantial evidence. An appellate court which reviews the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is viewed as such, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983).

9

Likewise, if a case rests essentially upon circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; *see also*, *State v. Mingo*, 51,647 (La. App. 2 Cir. 9/27/17), 244 So. 3d 629, *writ denied*, 17-1894 (La. 6/1/18), 243 So. 3d 1064. The appellate court will review the evidence in the light most favorable to the prosecution and determine whether an alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. *State v. Calloway*, 07-2306 (La. 1/21/09), 1 So. 3d 417; *State v. Garner*, 45,474 (La. App. 2 Cir. 8/18/10), 47 So. 3d 584, *writ not cons.*, 12-0062 (La. 4/20/12), 85 So. 3d 1256.

In the absence of any internal contradiction or irreconcilable conflict with physical evidence, the testimony of the witness, if believed by the trier of fact, alone, is sufficient support for a requisite factual conclusion. *State v. Elkins*, 48,972 (La. App. 2 Cir. 4/9/14), 138 So. 3d 769, *writ denied*, 14-0992 (La. 12/8/14), 153 So. 3d 438; *State v. Wiltcher*, 41,981 (La. App. 2 Cir. 5/9/07), 956 So. 2d 769.

Where there is conflicting testimony concerning factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Allen*, 36,180 (La. App. 2 Cir. 9/18/02), 828 So. 2d 622, *writ denied*, 02-2997 (La. 6/27/03), 847 So. 2d 1255. The appellate court neither assesses the credibility of witnesses nor reweighs evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442. Rather, the reviewing court affords great deference to the jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Gilliam*, 36,118 (La. App. 2 Cir.

*8/30/02)*, 827 So. 2d 508, *writ denied*, 02-3090 (La. 11/14/03), 858 So. 2d
422.

In the present case, Windham was charged with two counts of
resisting a police officer with force or violence, in violation of La. R.S.
14:108.2. This statute provides, in pertinent part:

> A. Resisting a police officer with force or violence is any of the
> following when the offender has reasonable grounds to believe
> the victim is a police officer who is arresting, detaining, seizing
> property, serving process, or is otherwise acting in the
> performance of his official duty:
>
> (1) Using threatening force or violence by one sought to be
> arrested or detained before the arresting officer can restrain him
> and after notice is given that he is under arrest or detention.
>
> (2) Using threatening force or violence toward or any resistance
> or opposition using force or violence to the arresting officer
> after the arrested party is actually placed under arrest and before
> he is incarcerated in jail.
>
> (3) Injuring or attempting to injure a police officer engaged in
> the performance of his duties as a police officer.
>
> (4) Using or threating force or violence toward a police officer
> performing any official duty.

On appeal, Windham does not argue whether he reasonably knew the
constables were officers, or that he used force or violence against either
during the arrest. He only asserts that neither constable was within their
jurisdiction to effectuate the arrest, and thus, were not acting within the
"performance of [their] official duty."

In this case, Constable Presley testified that on the night of the
incident, he and Constable Yount left a meeting in the Cross Lake area. He
then provided a general boundary description of his jurisdiction in Ward 3,
which was marked by "the 12-mile Bayou on North Market and goes to
Caddo Lake, to the Red River, to the state line." Constable Presley then

stated that when he is in his jurisdiction, he is "on duty 24-7." Regardless of Constable Presley's general boundary description of his jurisdiction, La. C. Cr. P. art. 213 provides, in part, that a peace officer may, without a warrant, arrest a person when the offense has been committed in his presence, and if the arrest is for a misdemeanor, it must be made immediately or on close pursuit.

It is undisputed that on the night in question, Windham nearly struck Constable Presley's vehicle, that he was seen speeding, traveling some 70 miles per hour in a 55-mile-an-hour zone, that Windham crossed over the center line of the highway, that Windham was seen weaving in and out as he drove, and had expired tags on his vehicle. Having witnessed Windham drive erratically and commit several traffic violations, Constable Presley and Constable Yount were well within their authority to stop Windham. Moreover, the officers were also within their authority to arrest Windham after he shoved Constable Presley and fled, dragging Constable Presley down the road to stop Windham from leaving the scene.

Accordingly, this Court finds that there is no need to take judicial notice of the map associated with Ward 3, which encompasses Constable Presley's and Constable Yount's jurisdiction. The constables in this case observed Windham commit several traffic violations and were within their authority to stop him, and then initiate the arrest thereafter. Therefore, we find that this assignment of error lacks merit.

***Excessive Sentence***

By his second assignment of error, Windham argues that the imposition of six years at hard labor is constitutionally excessive because he has no prior felony convictions or any previous convictions for resisting

arrest. Windham essentially argues he is not the worst of offenders and a maximum sentence for both counts is not an appropriate punishment for this offense. Moreover, Windham notes that his criminal history does not justify the imposition of consecutive sentences such that a consecutive maximum sentence is grossly disproportionate and serves nothing more than a needless infliction of pain and suffering.

Appellate review to determine whether a sentence is constitutionally excessive is a two-pronged inquiry whereby the court first considers whether the trial court took cognizance of the guidelines set forth in La. C. Cr. P. art. 894.1, and the second considers constitutional excessiveness. *State v. Wing*, 51,857 (La. App. 2 Cir. 2/28/18), 246 So. 3d 711. However, in this case, no motion to reconsider sentence was filed; therefore, this Court's review is limited to the constitutional excessiveness of the sentence alone. La. C. Cr. P. art. 881.1; *State v. Williams*, 51,667 (La. App. 2 Cir. 9/27/17), 245 So. 3d 131, *writ not cons.*, 18-0017 (La. 8/3/18), 248 So. 3d 322; *State v. Turner*, 50,221 (La. App. 2 Cir. 1/20/16), 186 So. 3d 720, *writ denied*, 16-0283 (La. 2/10/17), 215 So. 3d 700.

A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Smith*, 01-2574 (La. 1/14/03), 839 So. 2d 1; *State v. Mandigo*, 48,801 (La. App. 2 Cir. 2/26/14), 136 So. 3d 292, *writ denied*, 14-0630 (La. 10/24/14), 151 So. 3d 600. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Wing*, *supra*. The trial court maintains wide discretion in the

13

imposition of sentences within statutory limits, and absent a showing of manifest abuse, an imposed sentence will not be set aside as excessive. *State v. West*, 53,526 (La. App. 2 Cir. 6/24/20), 297 So. 3d 1081. Therefore, appellate review does not consider whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Dale*, 53,736 (La. App. 2 Cir. 1/13/21), 309 So. 3d 1031; *State v. Davis*, 50,149 (La. App. 2 Cir. 11/18/15), 181 So. 3d 200.

In this case, Windham was sentenced under La. R.S. 14:108.2 (C), which provides a penalty for this crime of a fine of not more than $2,000 and/or imprisonment with or without hard labor for not less than one year and not more than three years. The trial court ordered each sentence to be served consecutively.

With respect to whether two or more sentences should be served concurrently or consecutively, La. C. Cr. P. art. 883 provides in part:

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.

In cases involving multiple offenses and sentences, the trial court has limited discretion to order that the multiple sentences are to be served concurrently or consecutively. *State v. Nixon*, 51,319 (La. App. 2 Cir. 5/19/17), 222 So. 3d 123, *writ denied*, 17-0966 (La. 4/27/18), 239 So. 3d 836; *State v. Allen*, 52,318 (La. App. 2 Cir. 11/14/18), 260 So. 3d 703. Concurrent sentences that arise from a single course of conduct are not mandatory; likewise, consecutive sentences under those circumstances are not necessarily excessive. *Id.*

14

A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence or record. *Id.* Accordingly, when consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. Among the factors to be considered are: (1) the defendant's criminal history; (2) the gravity or dangerousness of the offense; (3) the viciousness of the crimes; (4) the harm done to the victims; (5) whether the defendant constitutes an unusual risk of danger to the public; and (6) the potential for the defendant's rehabilitation. However, the failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. *Id.*

As a general proposition, maximum or near-maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Collins*, 53,704 (La. App. 2 Cir. 1/13/21), 309 So. 3d 974; *State v. Cotten*, 50,747 (La. App. 2 Cir. 8/10/16), 201 So. 3d 299. However, the trial court nevertheless remains in the best position to consider the aggravating and mitigating circumstances of a particular case and is given broad discretion in sentencing. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So. 2d 957, *cert. denied*, 519 U.S. 1043, 117 S. Ct. 615, 136 L.Ed. 2d 539 (1996).

In sentencing Windham, the trial court considered the art. 894.1 factors, and reviewed Windham's criminal and personal history, as well as the particular facts that led to Windham's arrest. Specifically, the trial court highlighted that after Windham was pulled over, he shoved Constable Presley, proceeded to flee the scene, and in the process hit Constable Yount with the vehicle, while simultaneously dragging Constable Presley down the

15

road.  The trial court found that Windham's actions constituted "deliberate cruelty" and created the risk of death or great bodily harm to more than one person.  The trial court then detailed Windham's criminal history, which consisted of:

- 2015: Windham pled guilty to simple battery; suspended sentence and placed on probation for six months.

- 2016: Windham pled guilty to possession of marijuana; suspended sentence and placed on supervised probation for six months.

- 2017: Windham pled guilty to possession of marijuana; suspended sentence and placed on supervised probation for six months.

- 2019: Windham pled guilty to possession of marijuana; placed on supervised probation for one year.

- 2022: Windham pled guilty to felony possession of a Schedule II narcotic; sentence was suspended and placed on supervised probation for three years.  Windham also pled guilty to battery of a dating partner.

From this, the trial court noted that at the time of the current offense, Windham was on felony probation.  After reviewing the aggravating factors, the trial court determined that there were no applicable mitigating factors in this case and found that these crimes reflected Windham's "violent tendencies."

Although the trial court noted that Windham expressed that he was sorry for his actions, and was unaware that the constables were police officers, it nevertheless highlighted the seriousness of Windham's conduct, reiterating that Windham dragged a constable down the road in his attempt to flee, and that either constable could have been seriously injured by his actions.  Moreover, the trial court considered Windham to be a risk of danger to the public given Windham's past criminal history and conduct in

16

this offense and that his potential for rehabilitation was low given the numerous times he received a suspended sentence and was placed on supervised probation, yet continued to commit offenses, which culminated in the present offense.

In addition to the trial court's findings, this Court also highlights that the testimony in this case reflects that Constable Yount stated that Constable Presley repeatedly told Windham to "stop resisting," and that he had to assist Constable Presley in getting Windham out of the vehicle because of the ensuing struggle. Constable Yount further testified that even when he did manage to get Windham out of the vehicle, Windham *continued* to struggle and fought him even while pinned against the vehicle. Constable Yount stated that only when he drew his weapon did Windham stop struggling and resisting but still struggled some until another officer arrived and placed him in handcuffs. Deputy Daughtery also testified that when he arrived as backup, Windham was agitated and resisting both officers.

After a thorough review of this case, this Court finds that although Windham was given a maximum sentence for both counts, neither sentence was illegal, and both sentences fall within the sentencing range for this offense. Moreover, the trial court thoroughly articulated its reasonings for imposing maximum consecutive sentences for the particular facts of this case. Based on the foregoing, this Court finds that the sentence imposed is not disproportionate to the offense committed, nor can we say that the sentence is constitutionally excessive in light of the facts of this case.

Accordingly, we find that the trial court did not err in imposing this sentence, and this assignment of error lacks merit.

**CONCLUSION**

For the foregoing reasons, Windham's conviction and sentence are affirmed.

**AFFIRMED.**