Judgment rendered August 27, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,410-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

DALSTON MOSLEY                              Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 391,045

Honorable Donald E. Hathaway, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT                 Counsel for Appellant
By: Edward K. Bauman

JAMES E. STEWART, SR.                       Counsel for Appellee
District Attorney

GLENN G. CORTELLO
JASON W. WALTMAN
ERIC M. WHITEHEAD
ASHLIN N. THOMAS
Assistant District Attorneys

* * * * *

Before PITMAN, STONE, and THOMPSON, JJ.

**THOMPSON, J.**

The integrity of the trial of a man accused of attempted second degree murder while allegedly high on methamphetamines was compromised by his appointed counsel failing to preserve an intoxication defense, which limited the testimony and evidence to be presented to the jury and precluded jury instructions and a corresponding responsive verdict option. At the conclusion of the State presenting its case, defense counsel apparently learned for the first time of the stringent requirements of providing notice of an intent to assert the defense of intoxication, with which she had failed to comply. The trial court refused to allow the defense counsel to argue that the defendant could not form the necessary intent for a conviction of attempted second degree murder, and instead, the defense changed strategy and conferred with her client, who then proclaimed his innocence during his testimony. The defendant was convicted by a unanimous jury of attempted second degree murder.

He now appeals, arguing his lawyer's ineffective assistance of counsel prevented him from having a fair trial. Without addressing the sufficiency of the evidence and testimony at trial regarding the guilt of the defendant, we are bound to recognize the serious error by defense counsel affected the potential outcome by precluding consideration of the jurors of the defense of intoxication, corresponding jury instructions, and a responsive verdict option. Finding the error by defense counsel fell below an objective standard of reasonableness under prevailing professional norms, and that counsel's inadequate performance prejudiced the defendant to the extent that the trial was rendered unfair and the verdict suspect, we reverse the

defendant's conviction resulting from this trial, vacate his sentence, and remand this matter for new trial.

## FACTS AND PROCEDURAL HISTORY

On August 27, 2022, Ashley Green ("Green") and Tina Torrez ("Torrez") went to a Walgreens in Shreveport and picked up Dalston Mosley ("Mosley"). The three of them went back to Green's apartment and began using methamphetamines ("meth"). Mosley told Green that he needed toilet paper, and she went into the bathroom to get a roll. She testified that while her back was turned, she was "hit real hard" with a knife in the neck. Green made it to her bedroom and began to apply pressure to the wound and dialed 911. Police and medical assistance responded, and Green survived her wounds.

Soon after, police located Mosley in his truck, driving erratically in the Walgreens parking lot. After stopping him, when police searched Mosley, they found three knives on his person or in his truck. After being *Mirandized*, Mosley admitted to police that he had taken meth. Blood was found in his pants pocket. From the hospital, Green identified Mosley as the person who stabbed her from a six-person photo line up. Mosley was charged with attempted second degree murder.

A jury trial began August 9, 2024. Officer Eric Boughton of the Shreveport Police Department testified that he responded to the 911 call placed by Green, and that he and other officers kicked in the door to her apartment and applied pressure to the wound on her neck. He testified there was blood everywhere in the apartment. Corporal Louis Mason of the Shreveport Police Department also testified that he received a call about a white male driving a red truck "that had cut a woman." He identified a

2

white male in a red truck in a Walgreens parking lot who was driving erratically and almost hit another officer's patrol car. Corp. Mason pulled the suspect over and searched him. During the search, he noticed a pocketknife in his pocket that had red bloodstains on it. He also noticed red bloodstains in the suspect's jeans pocket as well. He continued his search and found another knife in a knife holster. A third knife was also found on his person. Corp. Mason noted that the suspect, whom he identified in court as Mosley, was fidgeting and he suspected that he was on drugs. The suspect confirmed that he had taken meth.

Corporal Amber Futch of the Shreveport Police Department testified that she is a crime scene investigator. She identified various photographs of bloodstains inside the apartment where Green had been stabbed and the knives retrieved from Mosley. Detective Ashley Thrift of the Shreveport Police Department then testified that she presented Green with a six-person photo lineup in the hospital and that Green identified Mosley as the person who stabbed her.

At trial, Green testified that she brought Mosley to her home to do meth. After they had taken the meth, Mosley asked Green for more toilet paper, and when she went to get some, he struck her in the neck with a knife. She then called 911 and put pressure on the wound until first responders arrived. In court, Green could not identify Mosley, saying he looked different, but was able to identify a photograph of Mosley at the time of the stabbing as the person who attacked her.

Stephen Henderson Sipes, III ("Sipes") testified that he was Mosley's mother's boyfriend, and they all lived together for several months. He testified that in 2020, he was in bed asleep when Mosley attacked him,

3

unprovoked, and stabbed him twice in the neck. On cross-examination, Sipes stated that he had never done meth with Mosley but had done meth with Mosley's mother. Sipes was dressed in an orange jumpsuit the day he testified at trial, as he was serving prison time for conviction of possession of meth.

Detective Jason Saiz of the Shreveport Police Department testified that in his examination of the crime scene, it looked as if an artery had been hit, due to the amount and spatter of the blood. He testified that he interviewed Mosley, after advising him of his *Miranda* rights, and that Mosley admitted he had been doing meth and that the three knives belonged to him. He testified that security footage from the Walgreens shows Mosley being dropped off after the stabbing at the Walgreens, and Mosley going into the store and purchasing a drink before returning to his truck. He got into the truck and drove away before being stopped later.

Kari Dicken testified that she works for the North Louisiana Criminalistics Laboratory, and that during her investigation and testing, she found both Green and Mosley's DNA on the blood from Mosley's jeans. Both Green and Mosley's DNA were also found on one of the knives retrieved from Mosley. She also identified Green's DNA on the knife holster.

Prior to the presentation of the defense's witnesses, defense counsel and the State discussed with the trial court the defense's plan to call Mosley to testify on his own behalf. The State argued that Mosley could not testify as to his intentions or state of mind on the night of the incident because doing so would be an intoxication defense and defense counsel had not given the State the ten-day notice required pursuant to La. C. Cr. P. art. 726.

4

Defense counsel admitted on the record that she had mistakenly failed to notify the State regarding the intoxication defense. She noted that she would need to confer with Mosley about his testimony because the trial strategy would have to be changed if Mosley was not going to be able to argue the defense of intoxication. Mosley's counsel also acknowledged to the court that her mistake warranted a mistrial and that she understood that the mistake would limit Mosley's testimony and the instructions that could be given to the jury. Mosley's attorney then called defense witnesses after conferring with Mosley.

Brandon Mosley, Mosley's father, testified that Sipes gave Mosley meth when he was 16 years old, resulting in an overdose. According to defense counsel's discussion with the trial court, this testimony was elicited to show that Sipes was lying when he testified that he had never done drugs with Mosely. Finally, Mosley testified on his own behalf. He testified that he frequently did drugs with Sipes and that they had a difficult relationship. He testified that prior to the incident, he had done a "hot shot," which he defined as dope being injected into the veins that is not meth with the intent to hurt or kill you. He testified that he had been doing meth constantly for two days prior to meeting Green in the Walgreens parking lot. Mosley testified that he did not stab Green and does not recall the incident happening. On cross-examination, Mosley testified that he successfully drove his car to his meeting with Green and purchased something in the Walgreens.

The jury unanimously convicted Mosley of attempted second degree murder. This appeal followed.

**DISCUSSION**

In his sole assignment of error, Mosley argues ineffective assistance of counsel, specifically citing two instances: 1) failure of trial counsel to object to a juror who recognized the victim during trial, and 2) failure of trial counsel to present an "intoxication" defense due to the failure to provide requisite notice under La. C. Cr. P. art. 726.

A claim of ineffective assistance of counsel is generally not urged on appeal. It is usually raised in the trial court through the means of an application for post-conviction relief. However, when the record is sufficient, an appellate court may resolve this issue on direct appeal in the interest of judicial economy. *State v. Cooley*, 51,895 (La. App. 2 Cir. 5/23/18), 247 So. 3d 1159, *writ denied*, 18-1160 (La. 3/6/19), 266 So. 3d 899. The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by U.S. Constitutional Amendment VI. Under the standard set out in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted by the Louisiana Supreme Court in *State v. Washington*, 491 So. 2d 1337 (La. 1986), a conviction must be reversed if the petitioner proves (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced the defendant to the extent that the trial was rendered unfair and the verdict suspect. *State v. Cooley*, *supra*.

A deficient performance is established by showing that the attorney's actions fell below the standard of reasonableness and competency required for attorneys in criminal cases and is evaluated from the attorney's

6

perspective at the time of the occurrence. *Strickland v. Washington*, *supra*. A reviewing court must give great deference to the trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. *State v. Nixon*, 51,319 (La. App. 2 Cir. 5/19/17), 222 So. 3d 123, *writ denied*, 17-0966 (La. 4/27/18), 239 So. 3d 836. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. *Strickland v. Washington*, *supra*; *State v. Nixon*, *supra*.

A defendant must show that this deficient performance prejudiced his defense. This element requires showing the errors were so serious that the defendant was deprived of a fair trial. *Strickland v. Washington*, *supra*. A defendant must prove actual prejudice before relief will be granted. *State v. Pratt*, 26,862 (La. App. 2 Cir. 4/5/95), 653 So. 2d 174, *writ denied*, 95-1398 (La. 11/3/95), 662 So. 2d 9. It is not sufficient for the defendant to show that the error had some conceivable effect on the outcome of the proceeding. Rather, he must show that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. *Id.*

Mosley first argues that his trial counsel provided ineffective assistance when she did not object to one of the jurors, Paula Richardson ("Richardson"). During the trial, Richardson informed one of the bailiffs that she recognized Green from her work at a mental health facility, where Green had once been a patient. The trial court then initiated an individual *voir dire* with Richardson regarding her knowledge of Green. Richardson stated that she did not speak with or have any interaction with Green at the

7

facility and that this information would not influence her decision. Mosley argues that it was ineffective assistance for defense counsel to make no objection to Richardson staying on the jury, even though there were no alternates, and that defense counsel did not question Richardson.

The record reflects that the trial court questioned Richardson about her limited knowledge of Green and determined that Richardson had never spoken to or interacted with Green in any way. The record does not reflect in this instance that defense counsel's actions fell below the standard of reasonableness and competency. The decision not to object is very likely a tactical decision, considering trial courts have often allowed jury members to remain on the jury after they declare that they are able to remain impartial and come to a reasonable verdict, after an inspection to determine the depth of the relationship. *See State v. Bratton*, 56,080 (La. App. 2 Cir. 2/26/25), 408 So. 3d 446; *State v. Brown*, 46,669 (La. App. 2 Cir. 2/29/12), 86 So. 3d 726, *writ denied*, 12-0724 (La. 9/14/12), 97 So. 3d 1016. Accordingly, this assignment of error lacks merit.

Mosely next argues that his defense counsel gave ineffective assistance of counsel when she failed to notify the State ten days prior to trial that she intended to offer a defense based on mental condition, pursuant to La. C. Cr. P. art. 726, which states:

> A. If a defendant intends to introduce testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether he had the mental state required for the offense charged, **he shall not later than ten days prior to trial** or such reasonable time as the court may permit, notify the district attorney in writing of such intention and file a copy of such notice with the clerk. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other orders as may be appropriate.

B. If there is a failure to give notice as required by Subsection A of this Article, the court may exclude the testimony of any witness offered by the defendant on the issue of mental condition.

(Emphasis added.)

Specifically, Mosely asserts that he intended to argue that he could not form the specific intent required to convict him of attempted second degree murder due to his intoxication. Attempted second degree murder requires that the state prove that the defendant intended to kill the victim and committed an overt act tending toward the accomplishment of the victim's death. La. R.S. 14:30.1(A)(1); *State v. Washington*, 50,424 (La. App. 2 Cir. 3/16/16), 188 So. 3d 350, *writ denied*, 16-0718 (La. 4/13/17), 218 So. 3d 119. Specific criminal intent is the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. *State v. Walker*, 53,975 (La. App. 2 Cir. 6/30/21), 321 So. 3d 1154, *writ denied*, 21-01334 (La. 11/23/21), 328 So. 3d 83. Specific intent can be inferred by the intentional use of a deadly weapon, such as a knife or a gun. *State v. Fields*, 42,761 (La. App. 2 Cir. 1/9/08), 973 So. 2d 973, *writ denied*, 08-0469 (La. 9/26/08), 992 So. 2d 983. The determination of whether the requisite intent is present in a criminal case is for the trier of fact. *State v. Washington*, *supra*.

Mosely contends that voluntary intoxication will not excuse a crime but is a defense to a specific intent offense where the circumstances indicate that an intoxicated or drugged condition precluded the presence of a specific criminal intent. Defense counsel was required to provide at least ten days

9

notice *prior* to trial to the State of this defense, which she did not do. Mosley argues that this negligence prejudiced him because he was unable to prove his intoxicated state precluded the presence of specific intent for the charge of attempted second degree murder. As a result, the jury instructions would not include a corresponding responsive verdict, and the jury would not be able to consider the defense and deliberate accordingly. Mosley contends that but for these errors, the result of his trial would have been different.

The record reflects that when Mosley attempted to testify about how he had been awake for two days prior to the incident, the State objected, arguing that it was not provided advance notice in accordance with La. C. Cr. P. art. 726. The trial court stated that it would allow testimony of prior drug use to impeach the witness, but intoxication could not be used as a defense to forming specific intent due to defense counsel's lack of notice to the State. Defense counsel ("Ferguson"), in a discussion with the judge outside the presence of the jury, stated on the record:

> Ferguson:    So I now understand the rules of procedure allowed and not allowed, and I understand that I was supposed to give notice and I admit my mistake.
> …
> Ferguson:    I just need to make sure on the record, after speaking with my supervisor, that I've given notice to the court of my error and that this is a potential mistrial claim in the future of Mr. Mosley. I just need to put that on the record.
>
> The Court:   And what is it that you are not being able to do?
>
> Ferguson:    Do the defense intoxication, the intoxication by the drugs and that vitiated his ability to have his specific intent. I did not give notice to the District Attorney's Office because I didn't know.
>
> The Court:   Well, how can you have notice if you do not know?

Ferguson:    Right. And now I know.

This exchange, on the record, indicates that defense counsel had no idea that notice of an intoxication defense was required prior to this discussion during trial. There is no evidence or indication in the record of a sudden change in trial strategy or efforts to force a mistrial by defense counsel by attempting to knowingly urge an intoxication defense late in the trial and well past the required notice to the court and State of such a defense. Defense counsel appears, rather, to have made an unwitting error and mistake arising from being unfamiliar with the required notice provisions, which impacted the available defenses and possibility to argue to the jury in favor of a responsive verdict.

Asserting an intoxication defense to defeat specific intent is not an uncommon trial tactic, but such a defense requires effort, evidence, and testimony. The record reflects the following discussion between the court and defense counsel regarding the evidence necessary to support an intoxication dense, which an experienced and competent attorney would have known about and prepared prior to the ten-day notice requirement and certainly prior to the jury trial:

> The Court:   All right. Did you have any medical reports that
> would have led you to believe Mr. Mosley was so intoxicated
> that he could not produce the requisite specific intent?
>
> Ferguson:    No, sir…
>
> The Court:   No medical records, no psychological report—
>
> Ferguson:    No, sir.
>
> …
>
> The Court:   I mean, so you had nothing to substantiate a claim
> of intoxication, but now you have chosen to use it at trial. You
> know, I get why you chose it. You know, sometimes you've

11

got to go with what you got. Even when you've got nothing, you've got to find something.

The record reflects that defense counsel's performance (in failing to preserve and pursue the intoxication defense and related responsive verdict and jury instructions) fell below an objective standard of reasonableness under prevailing professional norms.[1] *State v. Cooley, supra.* As noted above, a deficient performance is established by showing that an attorney's actions fell below the standard of reasonableness and competency required for attorneys in criminal cases and is evaluated from the attorney's perspective at the time of the occurrence. *Strickland v. Washington, supra.* Here, defense counsel did not know that she was required to give notice to the State of an affirmative defense on behalf of her client until it was pointed out to her during trial, by the State. It is also clear that defense counsel did not prepare any evidence to support her defense of intoxication that would increase her potential success on this defense for her client. A competent criminal attorney would have provided notice of her defense to the State prior to the deadline set forth in the Code of Criminal Procedure and would have prepared evidence to support this defense. Defense counsel's failure to know what to do and when to do it, as required by law, cost Mosley the opportunity to present the jury with evidence and argument that he was unable to form the requisite intent for the charge of second degree murder.

Having found that defense counsel's performance fell below an objective standard of reasonableness, we must now determine whether that

---

[1] "A conviction must be reversed if the petitioner proves (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced the defendant to the extent that the trial was rendered unfair and the verdict suspect." *State v. Cooley, supra.*

error by defense counsel prejudiced Mosley's defense such that he was deprived of a fair trial. *Strickland v. Washington*, *supra*. The record reflects an exchange between the trial court and the State regarding a potential change in the instructions to the jury based on defense counsel's inability to argue intent due to intoxication:

> The Court:   Yeah, but what about what we put in our jury instructions?
>
> The State:   Well, we can take it out depending on the court's ruling.

An examination of the jury charges in this matter indicates that the jury could elect to find Mosley guilty of 1) attempted second degree murder, 2) attempted manslaughter, 3) aggravated battery, or 4) not guilty. The jury was instructed that guilt of attempted second degree murder requires a specific intent to kill. La. R.S. 14:30.1. Attempted manslaughter requires a specific intent to kill, but the attempted killing is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of self-control or cool reflection. La. R.S. 14:31. Finally, aggravated battery has no legal intent requirement. La. R.S. 14:34. Criminal intent was defined for the jury, and they were instructed regarding the necessary elements for each of the possible crimes. There was no responsive verdict option for the jury to affirmatively find Mosley's intoxication prevented him from forming the requisite specific intent, and this absence is troubling under these facts and circumstances.

The record further reflects the following exchange between defense counsel and the State that occurred just prior to calling Mosley to the stand for his testimony in his own defense:

> Ferguson:    He can say whatever.  He just can't talk about what he just said [that he was so intoxicated that he couldn't inform the intent to commit murder].  Let me go talk to my witness, Your Honor, my first witness because I've got to change a little.
> …
>
> The State:    I think Ms. Ferguson needs a minute since it changed the strategy.

As described above, Mosley went on to testify that he was innocent of the charges and had not stabbed Green.

The State contends the fact that Mosley testified as to his absolute innocence precluded the use of an intoxication defense intended to defeat the specific intent element required for attempted second degree murder, citing *McCoy v. Louisiana*, 584 U.S. 414, 138 S. Ct. 1500, 200 L. Ed. 2d 821 (2018).  There, the U.S. Supreme Court held that it violated a defendant's Sixth Amendment rights for his defense counsel to admit his guilt in murdering three people during the sentencing phase of trial when the defendant had argued and maintained his innocence of the crimes.  *Id.*  We find the case at bar to be distinguishable from *McCoy*, *supra*.  Here, the record is clear that Mosley testified as to his innocence only *after* the error by his defense counsel that prevented him from arguing the affirmative defense of intoxication.  Moreover, the record indicates that defense counsel had to develop a new defense just prior to Mosley's testimony, likely leaving him the only feasible option of declaring his innocence.

We note the extensive evidence presented in this case, including Green's identification of Mosley as the perpetrator, the physical and DNA evidence on Mosley's clothes and knives, and the testimony presented to the jury that Mosley had previously stabbed someone while high on meth.  However, defense counsel's error goes to the specific intent required to

14

convict a person of attempted second degree murder, meaning that it was possible for the jury to have heard all of the above evidence and not found the requisite intent necessary for Mosley's conviction for attempted second degree murder. It is possible that a jury may have found Mosley guilty of one of the lesser offenses. The absence of that option for the jury to consider as a result of the error of defense counsel requires correction so that there is confidence in our system of justice.

We find that counsel's inadequate performance prejudiced Mosley such that the trial was unfair and the verdict suspect. *State v. Cooley*, *supra*. Mosley was not given the opportunity to argue that he could not form the necessary intent to commit attempted second degree murder due to the high level of drugs he allegedly ingested prior to the incident. Unlike the defendant in *McCoy*, *supra*, defense counsel's error in the present matter created a situation where Mosley's only strategy was declaring his innocence, as his other defense was precluded due to the mistake of his defense counsel. This assignment of error has merit; as such, we must reverse Mosley's conviction, vacate his sentence, and remand for a new trial.

## CONCLUSION

For the foregoing reasons, the conviction of Dalston Mosley is reversed, his sentence is vacated, and this matter is remanded for a new trial.

**CONVICTION REVERSED, SENTENCE VACATED, AND REMANDED FOR FURTHER PROCEEDING.**

15